[No. 10467.  Department Two.  January 18, 1913.]

JOHN GOODFELLOW, *Respondent*, v. FIRST NATIONAL BANK, *Appellant*.[1]

ACTIONS—PARTIES PLAINTIFF—CAPACITY TO SUE—TRUSTEE OF EX-PRESS TRUST. One having a deposit in a bank as agent may sue in his own name to recover the same, as he is a trustee of an express trust, within Rem. & Bal. Code, §§ 179,180, providing that every action shall be prosecuted in the name of the real party in interest, except that an action by a trustee of an express trust (defined as a person with whom or in whose name a contract is made for the benefit of another) may be prosecuted without joining the party for whose benefit the suit is prosecuted.

BANKS AND BANKING—CHECKS—DELIVERY TO AGENT—PAYMENT—FORGED INDORSEMENT. Where a check is drawn in favor of a principal and delivered to the payee's agent, the drawer does not vouch for the right of the agent or other person to indorse the name of the payee on the check; and in the absence of negligence or fault by the drawer, the bank must ascertain the identity of the payee before making payment, and is liable if it pays the check on a forged indorsement.

SAME—DELIVERY OF CHECK TO AGENT—NEGLIGENCE OF DRAWEE—EVIDENCE—SUFFICIENCY. Findings that the drawer of a check, which he delivered to one who claimed to be the agent of the payee, exercised due care and cannot be held for loss on a forgery of the payee's indorsement, are sustained by the evidence, where it appears that the supposed agent applied for a loan claiming to act as agent for the owners of the property, who had been known to the drawer ten years previously, that the drawer inquired for their address, and wrote them a letter making inquiry about the loan, but received no answer, and the agent delivered a forged note and mortgage purporting to be executed by the payee of the check.

Appeal from a judgment of the superior court for King county, Yakey, J., entered December 7, 1911, upon findings in favor of the plaintiff, in an action on contract, after a trial to the court.  Affirmed.

*Vince H. Faben*, for appellant.

*Peters & Powell*, for respondent.

[1]Reported in 129 Pac. 90.

MAIN, J.—This is an action brought by the respondent to recover from the appellant funds which he claims to have had on deposit in appellant's bank, and which were paid out upon a forged indorsement. During the months of August and September, 1910, and for a considerable time prior thereto, the respondent was engaged in real estate and loan brokerage business at Seattle, Washington. With him was associated his son, H. A. Goodfellow. An account was kept in the appellant's bank under the name of John Goodfellow, agent. Upon this account, H. A. Goodfellow, the son, had authority to draw checks. Some time during the month of August, 1910, one D. M. Peeples sought from H. A. Goodfellow a loan in the sum of $5,000, for one Martha B. Barnes and her husband, whom he stated were clients of his and desired the money principally for the purpose of paying local assessments and taxes upon the real estate offered as security. One Sieburn was a client of respondent's office at the time, and had money to loan. Upon making an examination of the land offered as security, Sieburn indicated his willingness to make the loan. An abstract of title was thereupon delivered to H. A. Goodfellow by Peeples.

Goodfellow, upon a casual examination of the abstract, noticed that the property stood in the name of Martha B. Barnes and her husband, W. H. T. Barnes, and thereupon asked Peeples the residence of the parties owning the land. Peeples stated that the Barnes formerly lived at Blaine, Washington, but had recently moved to Portland, Oregon. The Goodfellows, both father and son, had known Mr. and Mrs. Barnes, who formerly lived at Fremont in Seattle, for something over twenty years, but had had no communication with them for ten years prior to this time. H. A. Goodfellow thereupon addressed a letter to W. H. T. Barnes at Blaine, Washington, inquiring if he desired a loan of $5,000 upon the land covered by the abstract. This letter was received by Barnes, but he made no reply thereto.

Immediately after the delivery of the abstract by Peeples to Goodfellow, it was turned over to the attorney for Sieburn for examination. The title being approved, a note and mortgage for the sum of $5,000, made out ready for signature, were delivered to Peeples by H. A. Goodfellow in order that he might have his clients execute the same. In the course of a few days, Peeples returned to Goodfellow, in his office, the note and mortgage, which purported to have been executed by Mr. and Mrs. Barnes at Portland, Oregon. Thereupon Sieburn was communicated with, and the following day Sieburn, Peeples, and Goodfellow met at the latter's office for the purpose of closing the transaction. Sieburn took the abstract and, with Peeples, went to the city hall where, with his own check, Sieburn paid assessments against the property in the sum of approximately $3,400. Sieburn and Peeples then returned to the office of Goodfellow.

Sieburn caused the portion of the $5,000 loan not consumed in the payment of assessments to be placed to the credit of John Goodfellow, agent, in the appellant's bank; and H. A. Goodfellow thereupon drew a check payable to the order of Martha B. Barnes for the sum of $926.13, which check was signed "J. Goodfellow, agent, by H. A. Goodfellow." This check was delivered to Peeples, and in the course of three or four days thereafter, Peeples caused himself to be introduced at the Mercantile Bank in the city of Seattle, and thereupon presented the check, which at that time bore the following indorsement, "Martha B. Barnes, Dave Arlington, D. M. Peeples." The check was cashed by the bank, Peeples thereupon opening an account, and the sum of $200 was deposited to his credit. The check passed through the clearing house, and was paid by the bank of the appellant; this bank relying upon the indorsement of the Mercantile Bank. A few days later, and on September 7, a second check, for the sum of $432.01, was made out, payable to the order of Martha B. Barnes, and delivered to Peeples. This check took substantially the same course as

the preceding one, and was ultimately paid by the bank of
the appellant.

Some two weeks after these checks had been paid, it was
discovered that the name of Martha B. Barnes on the back
thereof was a forgery. It further appears from the evi-
dence in this case that Martha B. Barnes and her husband
W. H. T. Barnes had not been in the city of Portland at
the time the note and mortgage purported to be executed
there; neither had they executed the note or mortgage at
any other time or place. Peeples was in fact not their agent.
They had not authorized him or any other person to pro-
cure a loan for them. Subsequently the respondent drew
his check for a sum sufficient to cover the amounts covered
by the two checks on which the name of Martha B. Barnes
was forged, and presented the same to the appellant's bank,
where payment was refused. Thereupon this action was
brought. The cause was tried to the court without a jury,
and judgment rendered in favor of the respondent for the
amount of the two checks in question, from which judgment
the cause was brought here on appeal.

The first contention of the appellant is that the plaintiff
has no legal capacity to sue, for the reason that the suit
was not brought in the name of the real party in interest.
In support of this contention, the appellant cites Rem. &
Bal. Code, § 179, which provides: "Every action shall be
prosecuted in the name of the real party in interest, except
as otherwise provided by law." But the succeeding section,
180, provides, among other things, that a "trustee of an
express trust may sue without joining the person for whose
benefit the suit is prosecuted," and then defines what a trus-
tee of an express trust is within the meaning of this section.
Such definition is as follows: "A trustee of an express trust
within the meaning of this section shall be construed to in-
clude a person with whom or in whose name a contract is
made for the benefit of another." The right of the appel-
lant to bring the action in his own name, under § 180 of

the code, is amply supported by authority. *Citizens' Nat. Bank v. Columbia County,* 23 Wash. 441, 63 Pac. 209; *Cremer v. Wimmer,* 40 Minn. 511, 42 N. W. 467; *Albany & Rensselaer Co. v. Lundberg,* 121 U. S. 451.

The next question presented on this appeal is, whether or not the checks in question were paid on the indorsement of the payee which was intended by the drawer. In other words, did H. A. Goodfellow intend, when he delivered the checks to Peeples, that Peeples or any person other than Martha B. Barnes should indorse her name thereon? The appellant contends that he did, and supports this contention by the citation of the following authorities: *Emporia Nat. Bank v. Shotwell,* 35 Kan. 360, 11 Pac. 141, 57 Am. Rep. 171; *Maloney v. Clark & Co.,* 6 Kan. 82; *Robertson v. Coleman,* 141 Mass. 231, 4 N. E. 619, 55 Am. Rep. 471; *United States v. National Exchange Bank,* 45 Fed. 163; *Jamieson & McFarland v. Heim,* 43 Wash. 153, 86 Pac. 165. These are all cases where the payee of the check or bill was an impostor, assuming the name of some other person for the purpose of deception, imposition, and fraud. The impostor assumed to be, and by such assumption induced the drawer of the check or bill to believe that he was in fact, the person he claimed to be. The check or bill in each case was drawn payable to such impostor, and was intended by the drawer to be indorsed and cashed by him. The principle by which all of these cases are controlled is that, where the drawer of a check or bill makes it payable to a person who represents himself to be another and delivers it to him, he thereby endows such impostor with authority to indorse and cash the check.

But this principle is not applicable in the instant case. Here the check was made payable to the order of an existing person in whose name the title to the property covered by the mortgage stood, and it was delivered to Peeples as the agent of Mrs. Barnes. In such a case, the drawer does not vouch for the right of the agent, or any other unauthor-

ized person, to indorse the name of the payee upon the check. The law imposes upon the bank on which a check is drawn payable to a certain person or order the duty of ascertaining the identity of the person therein named as payee; and it is only when the bank has been misled by some act of negligence or other fault of the drawer, that it will be justified in making payment of the check to any other than the person named therein as payee. We know of no authority against this proposition. In support of it, see: *Murphy v. Metropolitan Nat. Bank*, 191 Mass. 159, 77 N. E. 693, 114 Am. St. 595; *First Nat. Bank v. Pease*, 168 Ill. 40, 48 N. E. 160; *Brixen v. Deseret Nat. Bank*, 5 Utah 504, 18 Pac. 43; *German Sav. Bank v. Citizens' Nat. Bank*, 101 Iowa 530, 70 N. W. 769, 63 Am. St. 399; *Atlanta Nat. Bank v. Burke*, 81 Ga. 597, 7 S. E. 738, 2 L. R. A. 96; *Harter v. Mechanics' Nat. Bank*, 63 N. J. L. 578, 44 Atl. 715, 76 Am. St. 224; *First Nat. Bank v. Farmers' & Merchants' Bank*, 56 Neb. 149, 76 N. W. 430; *Armstrong v. Pomeroy Nat. Bank*, 46 Ohio St. 512, 22 N. E. 866, 15 Am. St. 655, 6 L. R. A. 625; *Russell v. First Nat. Bank*, 2 Ala. App. 342, 56 South. 868; *Western Union Tel. Co. v. Bi-Metallic Bank*, 17 Colo. App. 229, 68 Pac. 115; *Mercantile Nat. Bank v. Silverman*, 148 App. Div. 1, 132 N. Y. Supp. 1017.

The third contention made by the appellant is that H. A. Goodfellow was negligent in the transaction in not ascertaining from the Barnes before making the loan whether or not they desired the loan in question. It is clearly the law, as the cases above cited show, that where the drawer of a check has been guilty of negligence, or there exist such facts as will work an estoppel upon him, he must suffer the loss, rather than the bank paying it, upon a forged indorsement. The trial court found that the plaintiff, through H. A. Goodfellow, in negotiating the loan in question and in accepting the note and mortgage and in drawing and delivering the two checks payable to the order of Martha B. Barnes, exercised due and ordinary care; and that, during

the negotiations with Peeples, there came to the notice of H. A. Goodfellow no fact or circumstance which would have caused an ordinarily prudent person to inquire into the authority of Peeples to represent Mrs. Barnes and her husband, or to suspect that Peeples was not authorized by the Barnes to negotiate the loan.

A reading of the statement of facts convinces us that these findings of the court are sustained by the weight of the evidence. The judgment will therefore be affirmed.

MOUNT, FULLERTON, MORRIS, and ELLIS, JJ., concur.