UNITED STATES FIDELITY & GUARANTY COMPANY, APPELLEE, v. FIRST NATIONAL BANK OF OMAHA, APPELLANT.

FILED MAY 17, 1935. No. 29246.

*Finlaysen, Burke & McKie,* for appellant.

*Gaines, McGilton, McLaughlin & Gaines, contra.*

Heard before GOSS, C. J., GOOD, DAY, PAINE and CARTER, JJ., and LOVEL S. HASTINGS and LIGHTNER, District Judges.

PAINE, J.

The United States Fidelity & Guaranty Company, plaintiff and appellee, brought action to recover $500 from the First National Bank of Omaha, defendant and appellant, on the ground that it had paid to the defendant $500 upon proof of loss under the terms of its bond protecting said defendant bank against loss on payment of forged instruments, whereas it had been fully reimbursed for said loss, which fact it concealed from the plaintiff.

In the petition it is alleged that the plaintiff, a Maryland corporation, is authorized to issue, and did issue, a policy of insurance known as bankers blanket forgery and alteration policy, by the terms of which the plaintiff agreed to indemnify the defendant against direct loss through payment by the defendant of any forged check or draft. That on October 9, 1928, defendant filed written proof of loss with plaintiff for that a forged check, dated October 5, 1928, was drawn upon the account of the Jerpe Commission Company of Omaha, payable at the First National Bank of Omaha, and bearing the forged signatures of its treasurer and president, said check being payable to Joe Fernald, and by him indorsed in blank, and that said proof of loss set out in paragraph 19 that indemnity or reimbursement on account of the forgery has not been received, either wholly or

in part, said proof of loss being duly executed on behalf of the First National Bank of Omaha by A. H. Chisholm, its assistant cashier; and the petition further alleged that on October 19, 1928, said defendant bank was reimbursed in full for all loss thereunder, and had no claim against the plaintiff on account thereof. That plaintiff company made diligent search and inquiry to determine the facts, but not until May 27, 1929, learned that the statements in the proof of loss were false and fraudulent representations and concealment by the defendant bank in that said bank had received the $500 in full and had suffered no loss. That the defendant bank filed its amended answer, admitting that it paid a forged check of the Jerpe Commission Company, purporting to be signed by G. C. Swanson and M. Olander, officers of said company, and gave due notice under the terms of its bond to the plaintiff company, and that plaintiff's agent requested defendant to attempt recovery of the amount paid on said check from the indorser thereon, and that defendant bank sent said check back to the Omaha National Bank, which bank returned it to the First National Bank of Lincoln, and the First National Bank of Lincoln collected $500 from the first indorser, but that said indorser had later demanded a return of the payment made from the First National Bank of Omaha, claiming that he had not known that said bank had actually paid the check, and thereupon the First National Bank of Omaha paid back to said indorser the amount of the check, and defendant bank denies that it was ever reimbursed or indemnified in any other manner, and asks that plaintiff's petition be dismissed.

It is quite necessary that the facts be set out in this opinion before discussing the law. Samuel L. Shostak testified that he had been in the poultry, egg and cream business in Lincoln for over 30 years; that Joe Fernald came into his office in a hurry, saying that he had to go to St. Joseph, Missouri, and asked him to cash this check of $500. He testified that Joe Fernald was the general manager of the Jerpe Commission Company in

Omaha, and had been coming to his office every week or so, representing that company in dealings in cream; that the check was made to this Joe Fernald, who told him that the bank would not cash the check, and thereupon Mr. Shostak indorsed his name under Mr. Fernald's name on the back of said check. It being a Jewish holiday, Mr. Shostak did not have time to go to the bank, as he was ready to go to church, but one of his men went to the First National Bank with Mr. Fernald, which bank thereupon cashed the check that day, to wit, October 6, 1928. Although Mr. Shostak had no knowledge of it at the time, the check was an absolute forgery, and Attorney Gaines, in his argument to this court, put the matter concisely by saying that this was perhaps the last act of Fernald, for he was run down, arrested as a crook, and landed in the penitentiary for this forgery.

The First National Bank of Lincoln sent this check to its correspondent, the Omaha National Bank, which bank gave credit to the Lincoln bank and sent it on through the Omaha clearing house to the First National Bank of Omaha, who received the same on the morning of October 8, and the amount was charged to the First National Bank of Omaha on the books of the Omaha clearing house. It was examined by the bookkeeper of the First National Bank of Omaha and charged to the account of the Jerpe Commission Company on October 8. The check was thereupon perforated with the "Paid" cancelation stamp of the First National Bank of Omaha.

It appears from the evidence that the Jerpe Commission Company is one of those firms against which a large volume of checks come in daily, so that they have their account balanced and get their checks from the First National Bank of Omaha each day, and received this check with many others on the morning of October 9. Shortly thereafter, in going through such checks the forgery was discovered by the Jerpe Commission Company, and the check was immediately returned by a messenger to the First National Bank of Omaha as a forgery; whereupon Mr. Chisholm, its assistant cashier, notified Mr.

Carroll, the claim adjuster of the plaintiff company, who took to said bank the blanks for executing plaintiff's exhibit No. 1, being a forgery proof of loss, which blanks were filled out and signed by Mr. Chisholm for the said First National Bank, the same having attached thereto an affidavit of G. C. Swanson, treasurer of the Jerpe Commission Company, and M. Olander, president of said company, describing the check and swearing that the same was forged. On October 24 the plaintiff company gave the First National Bank of Omaha its draft for $500, drawn on the Merchants National Bank of Baltimore, Maryland, in full payment of the claim, which was duly cashed by said bank. On October 9 the First National Bank of Omaha forwarded the forged check for collection to the Omaha National Bank, but no credit was given on the books of said bank to the First National Bank of Omaha. It was forwarded to the First National Bank of Lincoln by the Omaha National Bank, and exhibits Nos. 5 to 10, inclusive, show correspondence between the First National Bank of Lincoln and the Omaha National Bank, and on October 18 Leo J. Schmittel, junior vice-president, notified the Omaha National Bank that they had succeeded in collecting the $500 from the indorser. Whereupon, cashier's check No. 386877, drawn by the Omaha National Bank to the First National Bank of Omaha on October 9, which had been held pending payment by Shostak, was delivered to the First National Bank of Omaha on October 19, 1928, and on the next day cashed through the clearing house. It appears that Shostak at once took the matter up with his attorney, who made a trip from Lincoln to the First National Bank of Omaha, and demanded that that bank pay Shostak the amount of the forged check, as the bank had cashed it.

There appears in the evidence exhibit 2, attached to the deposition of Leo J. Schmittel, being a letter from A. H. Chisholm, assistant cashier of the First National Bank of Omaha, to Attorney Louis B. Finkelstein, of Lincoln, dated October 22, 1928, and reading as follows:

"With reference to your call at the bank here the

other day in connection with forged check of Jerpe Commission Company, No. 96849 for $500 payable to the order of Joe Fernald.

"We return the check herein, by registered mail, and will ask that you have your client return this check to the First National Bank of Lincoln and ask them to return it to the Omaha National Bank for reimbursement. The Omaha National Bank will, in turn, present the item to us and we will take the same up and make the proper demand for reimbursement from the insurance company.

"This procedure is necessary so as to have our claim in order when presenting to the insurance company for reimbursement.

"Please give this matter attention so that there will be no unnecessary delay in the matter."

The First National Bank of Lincoln, in accordance with this letter, paid Samuel L. Shostak $500 on October 25, and the First National Bank of Omaha, when the same reached that bank in due course, paid back the $500 and received the forged check. The defendant bank claims that it had thereby paid the forged check in question as fully and completely as if it had handed cash over the counter, and that it had no right of recovery from any indorser, and therefore claims that the plaintiff rightly reimbursed it. It also claims that Shostak's act in taking up the forged check on demand of the Lincoln bank was a voluntary payment, which he was not legally obligated to make, and having done so under a mistake as to the facts, he was entitled to recover the amount of such payment from the bank, and that, even though they held Shostak's $500 for a few days, the First National Bank was never actually reimbursed for the loss sustained by it in paying the forged check, and that the plaintiff was fully informed concerning all of the facts in relation to the Shostak reimbursement. Mr. Chisholm testified that Mr. Shostak's attorney threatened to bring suit, insisting that Shostak's payment was not voluntary and that he should have his money back, and that after the bank had

repaid the $500, when the forged check was returned to them the second time, he had a conversation with the claim adjuster of the plaintiff company, and said, in answer 508: "I told him we were threatened with a lawsuit unless we refunded the money to Shostak at Lincoln, and he said, 'That is all right, refund it, file your claim with us under your forgery bond, and we will pay the claim.'" Therefore, Mr. Chisholm refunded the money to Shostak and accepted payment of the claim from the plaintiff company. These facts Mr. Carroll absolutely denies, and testifies that he would not have delivered the draft to the bank if he had known that Shostak had paid the $500.

Testimony was introduced in regard to the rules of the Omaha clearing house, and defendant's exhibit No. 11 is a copy of section 13 of the constitution and by-laws of the Omaha clearing house, as adopted August 21, 1923, in relation to the hours of returning checks between members, and provides: "All checks received in the morning exchanges, not found good, are to be returned the same day to the member from which received before three (3) o'clock p. m." Under this clearing house by-law it was impossible for the First National of Omaha to return the forged check on the following day, October 9, when it was returned to said bank from the Jerpe Commission Company, and the transaction on this check was ended, so far as its presentation and payment were concerned.

At the close of the evidence the defendant moved the court for an instructed verdict in its favor, or, in the alternative, that the jury be discharged and judgment entered in its favor. Whereupon, the plaintiff joined in the motion to discharge the jury, but moved for a judgment for the plaintiff. In consideration of these motions, the jury were discharged, and the cause came on for hearing to the court. Whereupon, the court entered judgment for the plaintiff for $683.50, with interest at 7 per cent.

The errors relied upon for reversal are: That the judgment is contrary to law, and is not sustained by

sufficient evidence, and is contrary to the evidence; that the court erred in entering judgment for plaintiff, and in not entering a judgment for the defendant.

When a check has been paid and canceled by the drawee bank, and the amount is charged to the drawer's account, and credit given the account of the bank presenting the check, and the drawee bank fails to return the check to the presenting bank within the time allowed by the clearing house rules, it is considered paid for all purposes. This is because the drawee bank is deemed the place of final settlement, where all prior mistakes and forgeries shall be corrected and settled once for all, and if the forgery is overlooked and payment is made, it must be deemed final. The rule seems to be well established that a drawee bank which pays a forged check to a *bona fide* holder for value and without fault, cannot recover the payment from him. 5 Michie, Banks and Banking, sec. 269. It has been held that, although the rules of the clearing house provided that drawee banks might return checks at any time before 3 p. m., a bank can only do so where it has at no time debited the amount of the check against the account of the drawer. *First Nat. Bank of Philadelphia v. National Park Bank of New York,* 165 N. Y. Supp. 15.

The defendant bank calls our attention to the case of *Price v. Neal,* 3 Burrows (Eng.) 1355. This case was tried before Lord Mansfield at Guildhall, November 16, 1762. Two bills were drawn, which had been accepted and indorsed for a valuable consideration and paid, but both bills had been forged by one Lee, who was hanged for this forgery shortly thereafter. It appears that the defendant, Neal, acting innocently, and without the least privity or suspicion of the said forgeries, paid the whole value of those bills. The arguments of Mr. Stowe for the plaintiff are set out at length, and the argument of Mr. Yates for the defendant was begun, when he was stopped by Lord Mansfield saying that this was one of those cases that could never be made plainer by argument. He held that it was an action upon the case for money

had and received, in which the plaintiff could not recover the money unless it be against conscience in the defendant to retain it; that the defendant gave notice to the plaintiff of a bill drawn upon him; that he sent his servant to pay it and take it up, and then "lies by, for a considerable time after he has paid these bills; and then found out 'that they were forged;' and the forger comes to be hanged. He made no objection to them, at the time of paying them. Whatever neglect there was, was on his side." It was held by Lord Mansfield that an innocent indorsee cannot be compelled to refund the money paid to him on a forged acceptance. This case was reviewed at length by Mr. Justice Story in *Bank of United States v. Bank of Georgia*, 10 Wheat. (U. S.) 333.

Dean Ames, in 4 Harvard Law Review, 297, shows that, while the rule adopted in *Price v. Neal, supra*, has been recognized in Europe and the United States, still there is no unanimity as to the reason for the rule. He says that the reason usually given is the negligence of the drawee, which prevents his recovery. But Dean Ames says the true principle is that, as between two persons having equal equities, one of whom must suffer, the legal title shall prevail. Each paid in the belief that the instrument was genuine, but the holder has the legal title to the money.

We find another review of *Price v. Neal, supra*, by Prof. Aigler in 24 Michigan Law Review, 809, in which he says that Gibbs, C. J., in *Jones v. Ryde*, 5 Taunt. (Eng.) 488, said that in *Price v. Neal* the bill was paid by the person who of all others was the best judge whether the acceptance was his handwriting or not. Prof. Aigler says that only a few states have disapproved the doctrine, and only one state, Pennsylvania, provided a contrary rule by statute in 1849.

In another review of this famous case, in 24 Columbia Law Review, 469, it is said that when a bank pays a check it parts with its own money, and not the money of the depositor whose name is signed as the drawer. The bank may not charge the check to the depositor,

because the bank is bound to know the genuine signature of its customer.

As the bank paid the money under a mistake of fact, can it recover the money from the indorser? Since the decision in *Price v. Neal*, it has been settled that the bank could not recover. It is a rule of convenience, rather than logic or equity. The rule of *Price v. Neal* is the basis for that section of our negotiable instruments law set out in section 62-503, Comp. St. 1929. See Brannan, Negotiable Instruments Law (5th ed.) sec. 62.

Where a draft purported to be drawn by the acting quartermaster of the United States army upon the treasurer of the United States, who paid the same, Mr. Justice McReynolds held that the government could not, upon discovering that the same was forged, recover the sum paid by it on such draft to an innocent collecting bank. *United States v. Chase Nat. Bank*, 252 U. S. 485, 10 A. L. R. 1401. See, also, *State Bank of Chicago v. First Nat. Bank of Omaha*, 87 Neb. 351.

It has been held that, where a mistake of fact is due to the wilful or intentional neglect on the part of the person making the payment to investigate the facts, he should not be allowed to recover the money paid, for under such circumstances he would be estopped to allege that he was without knowledge, and therefore the negligence of a drawee of a forged bill of exchange in not discovering the forgery before payment is held to preclude him from recovery. 21 R. C. L. 167, sec. 196; *Smith v. Rubel*, 140 Or. 422, 87 A. L. R. 644.

The First National Bank of Omaha, drawee, having actually accepted and paid the forged check and canceled it, suffered the loss thereof. Shostak's voluntary payment of $500 was one he was not required in law to make, having made such payment by mistake, without knowing that the check had actually been paid and canceled by the drawee bank. He paid it upon the representation that it was returned unpaid by the bank because the signatures were forged. After Shostak had taken the check to the store he discovered for the first

time that the check had actually been canceled and paid by the drawee bank, and immediately consulted his attorney, who threatened suit in his behalf.

As a general rule, payment under a mistake of fact, which the payor was under no legal obligation to make, may be recovered back. 48 C. J. 759; *Billings v. McCoy Bros.,* 5 Neb. 187; 21 R. C. L. 167, sec. 196; *Douglas County v. Keller,* 43 Neb. 635.

We therefore hold that the payment made by Shostak was under a mistake of fact, and that he was legally entitled to recover the amount from the First National Bank of Omaha, which bank had the right to recognize this liability and repay the amount to Shostak, without suit.

This question being settled, it is plain that the defendant bank, having paid a forged check and suffered a direct loss thereon, was entitled, under its blanket bond, to recover the amount of its loss from plaintiff, United States Fidelity & Guaranty Company.

For prejudicial errors in the trial, and judgment in conflict herewith, the judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.