[No. 497-3.    Division Three.    November 17, 1972.]

GAYLORD G. THIEME et al., *Respondents,* v. SEATTLE-FIRST NATIONAL BANK, *Appellant,* BANK OF EVERETT, *Respondent.*

*Julian C. Dewell* (of *Anderson, Hunter, Carlson & Dewell*), for appellant.

*Sanford Skidmore*, for respondents Thieme et al.

*Edward E. Level* (of *Bell, Ingram, Johnson & Level*), for respondent Bank of Everett.

GREEN, J.—Plaintiffs, Gaylord G. Thieme and Russell L. Armstrong, brought this action against defendant, Seattle-First National Bank (hereinafter called "SFNB"), to recover the payment of their check for $3,500 upon an unauthorized endorsement. SFNB cross claimed against co-defendant Bank of Everett for any loss it might sustain in the event judgment was entered against it. The trial court entered judgment for plaintiffs against SFNB, but denied a recovery on the cross claim. SFNB appeals.

The facts are not in substantial dispute. Plaintiffs were partners operating a business known as Dune Buggy Sales in Richland. James Hampton, representing himself to be an agent for Dune Buggy Enterprises, a California corporation, persuaded the plaintiffs to apply for a Dune Buggy franchise covering the state of Idaho. On July 30, 1970, they signed a franchise agreement and delivered it to Hampton, together with their check for $3,500 drawn on SFNB, Richland branch, payable to Dune Buggy Enterprises. The agreement was subject to approval of Dune Buggy Enterprises in California. If the agreement was accepted by them, an additional payment by plaintiffs of $4,000 was due October 1, 1970. Hampton mailed the agreement to Dune Buggy Enterprises in California without a check.

On July 31, 1970, Hampton opened an account at the Bank of Everett, Everett, Washington, under the name of Dune

Buggy Enterprises, representing himself to be the sole owner. On the same day Hampton took the plaintiffs' check for $3,500 to SFNB, Everett Branch, and requested it certify the check or issue it in another form. SFNB-Everett advised that it could not certify checks between branches, but could issue a cashier's check. Hampton endorsed plaintiffs' check on behalf of Dune Buggy Enterprises. In return, SFNB-Everett issued and delivered to Hampton a cashier's check payable to Dune Buggy Enterprises. Hampton took the cashier's check to the Bank of Everett, endorsed it on behalf of Dune Buggy Enterprises, and used it to purchase traveler's checks.

Subsequently, plaintiffs learned from Dune Buggy Enterprises that their check had not accompanied the distributor agreement to California; and further, Hampton was not its agent. Upon checking with SFNB-Richland, they were informed the $3,500 check had cleared their account. After demands were made on several of the parties, this action was commenced resulting in judgment for plaintiffs against SFNB. Judgment in favor of SFNB against the Bank of Everett on their cross claim was denied.

SFNB contends that judgment should not have been entered against it because plaintiffs ratified the endorsement of Hampton, RCW 62A.3-404(2), and are precluded by their delay from making a claim, RCW 62A.4-405. In support of this contention, SFNB argues that after plaintiffs learned the check had been paid through their account, they turned down an offer by Dune Buggy Enterprises to complete the transaction upon payment of the balance of $4,000, and for 60 days, without making demand upon SFNB sought reimbursement from Dune Buggy Enterprises and later from the Bank of Everett. In so doing, SFNB argues, plaintiffs ratified Hampton's unauthorized endorsement and are precluded in the present claim by their failure to proceed with reasonable promptness. We disagree.

RCW 62A.3-404(2) provides in pertinent part:

Any unauthorized signature may be ratified for all purposes of this Article.

In 2 R. Anderson, *Uniform Commercial Code* § 3-404:7 (2d ed. 1971), at 924, the author states:

> To constitute ratification of an unauthorized signature it must be shown that the person sought to be bound by the alleged ratification has full knowledge of all material facts and expressed an intent to ratify the unauthorized act.

*See* UCC § 3-404, Comment 3. The fact that plaintiffs asserted their claim against others is proof they did not abandon their claim for reimbursement and thus did not intend to ratify the unauthorized endorsement. Further, plaintiffs' refusal of the Dune Buggy Enterprises offer supports the fact that the plaintiffs did not intend ratification. We find no conduct or express statement by plaintiffs that would constitute ratification under RCW 62A.3-404(2).

Likewise, we are unable to agree that RCW 62A.4-406[1] precludes the plaintiffs' claim. Considering all the circumstances, plaintiffs acted with reasonable promptness. As soon as plaintiffs received notice that their check had not accompanied the agreement to California, they promptly

---

[1]RCW 62A.4-406 in pertinent part states:

"(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

"(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank

"(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

"(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration."

called SFNB with the intent to stop payment on it. When they learned it had cleared their account and had been exchanged for a cashier's check, they requested SFNB to assist in obtaining a copy of the cashier's check and identify the path this check had followed. These events transpired before the plaintiffs received their bank statement containing the canceled check with the forged endorsement. Further, SFNB has not established that it suffered any loss by reason of the 60-day delay. Judgment was properly entered for plaintiffs.

Next, SFNB contends the trial court erred in refusing to enter judgment upon its cross claim against the Bank of Everett for the latter's cashing of the cashier's check upon an unauthorized endorsement. In support of this position, it is pointed out that SFNB-Everett merely changed the name of the drawer from plaintiffs to SFNB, leaving the payee on the cashier's check precisely the same as it was on the original check. Thus, SFNB argues that since it was held liable to plaintiffs for accepting an unauthorized endorsement from Hampton on plaintiffs' check, the Bank of Everett should be held liable to it for taking Hampton's unauthorized endorsement on their cashier's check. The trial court, in ruling against this position, held that by issuing the cashier's check

> SFNB went beyond equal opportunity and allayed the ordinary caution of others dealing with the cashier's check so issued.

We are unable to so interpret the record.

Under the Uniform Commercial Code adopted in this state, RCW 62A.3-417[2] and RCW 62A.4-207(1),[3] a bank

---

[2] RCW 62A.3-417:

"(1) Any person who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that

"(a) he has a good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title; . . .

" . . .

"(2) Any person who transfers an instrument and receives consideration warrants to his transferee and if the transfer is by indorsement

that accepts and pays a check upon unauthorized or forged endorsement of the payee warrants to subsequent transferees the validity of that endorsement and may be held liable upon that warranty. Further, under RCW 62A.3-405, relating to imposters, it is said the maker or drawer of a check who takes the precaution of making the instrument payable to a principal is entitled to the principal's endorsement; the fact that the one to whom the check is delivered falsely represents himself to be the agent of the payee does not create an impostor situation relieving the one cashing the check from his duty to obtain an authorized endorsement. *See* UCC § 3-405, Comment 2;[4] *accord, Goodfellow v. First Nat'l Bank,* 71 Wash. 554, 559, 129 P. 90 (1913).

The trial court sought to avoid the impact of these rules when it found that the issuance of the cashier's check by SFNB-Everett "allayed the ordinary caution of others dealing with the cashier's check so issued." In essence, this is a finding of negligence against SFNB precluding its claim against the Bank of Everett. *See* RCW 62A.3-406. The evidence does not support this conclusion. The payee on the original check is identical to the payee on the cashier's check. The issuance of the cashier's check did not remove the responsibility of the Bank of Everett to ascertain that the check was properly endorsed by the named payee. Thus, the situation as to the payee was no different than if the original check had been presented to the Bank of Ever-

---

to any subsequent holder who takes the instrument in good faith that

"(a) he has a good title to the instrument . . .

"(b) all signatures are genuine or authorized; . . ."

[3]RCW 62A.4-207(1):

"Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank . . . that

"(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; . . ."

[4]Comment 2 (RCWA 62A.3-405), in pertinent part states:

" 'Imposter' refers to impersonation, and does not extend to a false representation that the party is the authorized agent of the payee. The maker or drawer who takes the precaution of making the instrument payable to the principal is entitled to have his indorsement."

ett for payment; or, the original check had been certified and presented. The only area in which the Bank of Everett could have justifiably relaxed its caution was as to the solvency of the drawer, SFNB; but, this would not justify its failure to obtain a valid endorsement by the named payee.

In *Society Nat'l Bank v. Capital Nat'l Bank,* 30 Ohio App. 2d 1, 281 N.E.2d 563 (1972), a case decided subsequent to the trial court's decision in the instant case, the Ohio court faced these same problems on almost identical facts under similar statutes. That court held a bank is not negligent in exchanging a cashier's check made out to a named payee for a personal check drawn by its customer to the same payee bearing an unauthorized endorsement. In so doing, the bank that issued the cashier's check was allowed to recover against the bank that cashed it upon an unauthorized endorsement. We believe the reasoning of this case is sound and should be adopted as decisive of the same issues raised in this case. *See also First Nat'l Bank v. Liberty Nat'l Bank & Trust Co.,* 392 P.2d 747 (Okla. 1964).

> Neither do we agree with the trial court's conclusion that The Bank of Everett, in its position as presenting bank, gave value without notice of defect and was a holder in due course.

Reliance upon the impostor rule by Bank of Everett to attain the status of holder in due course cannot be sustained. Hampton did not claim to be the payee, but only the agent of the payee and thus the impostor rule does not apply. RCWA 62A.3-405, Comment 2, *supra.* Hampton did not have authority to negotiate a check payable to Dune Buggy Enterprises. Bank of Everett could not become a holder of the cashier's check, RCW 62A.1-201(20), based upon Hampton's unauthorized endorsement, RCW 62A.3-202, RCW 62A.3-404(1), and hence could not become a holder in due course. RCW 62A.3-302(1). *Stone & Webster Eng'r Corp. v. First Nat'l Bank & Trust Co.,* 345 Mass. 1, 184 N.E.2d 358 (1962); *Brady on Bank Checks* § 5.1 (4th ed. 1969). Hampton's endorsement of plaintiff's check to

SFNB-Everett in no way excused the Bank of Everett's obligation to obtain a proper endorsement on the cashier's check.

The judgment in favor of plaintiffs against SFNB is affirmed; the denial of judgment upon the cross claim is reversed and remanded for entry of judgment in favor of SFNB against the Bank of Everett.

MUNSON, C.J., and EDGERTON, J., concur.