JOHN MADDOX AND CAROL MADDOX, BY THEIR GUARDIAN, J. MICHAEL FITZGERALD, APPELLEES AND CROSS-APPELLANTS, V. FIRST WESTROADS BANK A CORPORATION, APPELLANT AND CROSS-APPELLEE, IMPLEADED WITH CENTER BANK, A CORPORATION, APPELLEE AND CROSS-APPELLEE.

256 N. W. 2d 647

Filed July 20, 1977. No. 41074.

William J. Tighe, for appellant.

J. Michael Fitzgerald of Matthews, Kelley, Cannon & Carpenter, for appellees Maddox.

Ronald H. Stave and J. Michael Coffey of Emil F. Sodoro Law Office, for appellee Center Bank.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

In a petition filed in the District Court for Douglas County on June 18, 1975, John and Carol Maddox, hereinafter called plaintiffs, by their guardian, sought damages against defendants First Westroads Bank and Center Bank on the grounds that the defendants had unlawfully permitted improper charges to be made against savings accounts held by plaintiffs in Westroads; and that the depletion of the savings accounts was the result of forgery. In their petition and amended petition plaintiffs alleged that Westroads had improperly charged and closed their savings accounts at Westroads upon presentation of withdrawal slips bearing the forged signatures of their guardian; that Westroads had issued two cashier's checks, payable to their guardian, in closing the accounts; and that the cashier's checks

were deposited in Center Bank, and presented to and paid by Westroads, upon the forged endorsements of their guardian. Plaintiffs alleged that improper charges to their accounts at Westroads and forgeries of their guardian's signatures on the withdrawal slips and cashier's checks made defendants liable to them in the amount of $18,364.22, plus interest.

In their answers, both defendants denied the forgeries, and each alleged that any damages plaintiffs may have suffered were not proximately caused by it. The defendants filed cross-claims against each other, each alleging that any loss sustained by plaintiffs was due to the negligence of the other bank. Both defendants disclaimed liability to each other under provisions of the Uniform Commercial Code.

This case was submitted to the trial court upon motions for summary judgment filed by all three parties. The trial court entered summary judgment in favor of plaintiffs against Westroads. It dismissed plaintiffs' claims against Center Bank, and entered judgment in favor of Center Bank on Westroad's cross-claim, except for any proceeds from the cashier's checks which remained in Center Bank. Westroads has appealed from the judgments of the trial court, and plaintiffs have cross-appealed from the dismissal of their claim against Center Bank. We affirm the judgment in favor of plaintiffs against Westroads, and reverse the judgment in favor of Center Bank on Westroads' cross-claim.

The evidence presented in this case by the parties in support of their motions for summary judgment consisted of affidavits, a stipulation of facts, and documentary evidence. There was no dispute of relevant facts at the time the motions were submitted, and the facts are as follows.

Richard Maddox died in May 1973, leaving life insurance policies in which plaintiffs were named as beneficiaries. "Barbara Jean Maddox" was appointed guardian of the plaintiffs on May 31, 1973.

On October 22, 1973, Joseph Savin, representing himself as the attorney for Barbara, opened two savings accounts at Westroads. The accounts were opened in the name of "Barbara J. Maddox," as guardian of each of the plaintiffs. Savin deposited an insurance check in the amount of $7,500 in each account, the checks bearing the typewritten endorsement of Barbara as guardian of each plaintiff. On November 14, 1973, the additional sum of $1,500 was deposited in each account. It is admitted that Westroads never obtained a signature card from Barbara at any time relevant to this case.

On May 6, 1974, Savin presented to Westroads two withdrawal slips which bore the forged signatures of Barbara, stating that he wished to withdraw all the funds in plaintiffs' accounts. Westroads issued two cashier's checks, payable to Barbara as guardian of each of the plaintiffs. The total amount of the two checks was $18,364.22, which was also the total amount of funds in the savings accounts. On the line for the name of the remitter on each check, the words "To Close Account" were typed. The two checks were given to Savin. Westroads admits that its employees made no comparison of the signatures on the withdrawal slips with signatures of Barbara on any signature cards when the money was withdrawn from the accounts.

On May 7, 1974, Savin presented the Westroads checks to Center Bank. The checks were endorsed "Pay to the Order of JOSEPH SAVIN, Trustee," and bore the forged signature of Barbara, as guardian of each plaintiff. Beneath Barbara's forged signature was the signature of Joseph Savin, as trustee for Barbara, guardian of plaintiffs. Savin also purchased two Center Bank savings certificates payable to himself as trustee for Barbara, guardian of plaintiffs. The initial deposits and purchase price of the savings certificates at Center Bank totalled $18,364.22, which was also the total amount of the Westroads

cashier's checks. Center Bank endorsed the Westroads cashier's checks, stamping them "P.E.G." (prior endorsement guaranteed), and presented them to Westroads through normal banking channels. Westroads honored the checks.

During the period from May 10, 1974, to November 5, 1974, Savin withdrew $8,300 from the accounts in Center Bank and redeemed the Center Bank savings certificates for more than $10,000, depleting almost the entire amount of funds initially placed in Center Bank.

After the judgments were rendered in this case, Westroads filed a motion to set aside the judgments and for new trial on the ground of newly discovered evidence. A hearing was had on this motion, and the following facts were adduced.

In 1973, Savin rented office space from an Omaha law firm which was handling a wrongful death action in regard to the death of Richard Maddox. Savin was handling guardianship matters for Barbara. In 1974, James Miller, a member of the law firm which rented office space to Savin, received a bill in connection with the guardianship funds of the plaintiffs. Savin was no longer available for consultation, and Miller's investigation led to the discovery that Savin had withdrawn the guardianship funds from Westroads. On March 24, 1975, Miller wrote a letter to the president of Westroads, stating that he had found materials concerning the guardianship in a file his law firm had maintained in regard to the wrongful death action it had handled. The letter stated that the file contained copies of the Westroads cashier's checks, and that Miller's inquiry would continue. This letter was received by Westroads prior to trial, and was given to its attorneys. Westroads did not request to see the guardianship materials in the file, nor did Miller deny Westroads access to the file.

After the judgments were rendered in this case, the president of Westroads discussed the case with

Miller; and an examination of the file in Miller's possession led to discovery of a copy of a purported authorization signed by "Barbara Jean Maddox," which authorization was dated February 27, 1974, addressed to Westroads, and stated that Savin had the authority to withdraw funds from the guardianship accounts. A copy of a letter from Savin to Barbara, dated February 25, 1974, and requesting authorization to withdraw funds from the guardianship accounts, was also discovered. Westroads contended that the authorization was newly discovered evidence which warranted the granting of a new trial. The trial court overruled the motion of Westroads.

On appeal, Westroads contends that the judgments against it were not sustained by the evidence and contrary to law; that the trial court misconstrued the provisions of the Uniform Commercial Code; and that the trial court erred in overruling its motion for a new trial on the ground of newly discovered evidence. In their cross-appeal, plaintiffs contend that it was error to dismiss their claim against Center Bank, although they concede that if the judgment in their favor against Westroads is upheld, they have no right to recover from Center Bank.

This case involves the interpretation of provisions of Articles 3 and 4 of the Uniform Commercial Code, and certain definitions in the Code are relevant as an introduction to the following discussion. Plaintiffs, by their guardian, Barbara, were "customers" who maintained "accounts" at Westroads. § 4-104, U. C. C. Westroads, in issuing the cashier's checks, was both the "drawer" and "drawee" of the checks, as a cashier's check is simply a bill of exchange or draft drawn by a bank upon itself. Brady on Bank Checks, § 1.6, p. 10 (4th Ed., 1969). Barbara was the "payee" on the cashier's checks, as the checks were made payable to her order. See § 3-110, U. C. C. Westroads was the "payor bank" and Center Bank

was a "depositary bank" and a "collecting bank" under section 4-105, U. C. C.

We first consider the issue of whether the trial court erred in entering judgment in favor of plaintiffs against Westroads. The foundation of the relationship between a bank and its customer is the bank's agreement to pay out the customer's money only on his or her order, and the bank's relation to its depositor is that of debtor and creditor. White & Summers, Uniform Commercial Code, § 17-1, p. 551 (1972); Glass v. Nebraska State Bank, 175 Neb. 673, 122 N. W. 2d 882 (1963). Section 4-401, U. C. C., provides that a bank may charge against a customer's account any item which is "properly payable" from that account.

In the present case, Westroads was indebted to plaintiffs in the amount of the deposits made in their accounts. Westroads proceeded to charge and close plaintiffs' accounts upon receipt of the forged deposit slips and issuance of the cashier's checks. The process was completed when Westroads paid the cashier's checks. Westroads seeks to avoid liability to plaintiffs by arguing that it was not negligent in closing the accounts by issuing cashier's checks payable to the customers and delivering the checks to an agent of the customers, even though the withdrawal slips bore the forged signature of its customers' guardian.

Such an argument is without merit, as Westroads' liability to plaintiffs rests on several grounds. First, Westroads charged plaintiffs' accounts without receiving a valid order to do so. It is elementary that a bank is held bound to know the genuine signature of its customers. United States Fidelity & Guaranty Co. v. First Nat. Bank of Omaha, 129 Neb. 102, 260 N. W. 798 (1935). A bank may not permit withdrawal of funds from a savings account absent an order of its depositor. Where a savings bank grants withdrawal payments to a person not representing himself to be

the depositor and who obtains payment upon the strength of an order purported to be signed by the depositor, the same rules should apply as are applicable to banks with respect to forged checks. 10 Am. Jur. 2d, Banks, § 529, p. 505. Those rules provide that a bank paying a forged check may not charge the amount of the check against the account of the person whose name is forged. See, Brady on Bank Checks, § 15.2, p. 284 (Supp., 1977); Comments to § § 3-417 and 3-418, U. C. C.; United States Fidelity & Guaranty Co. v. First Nat. Bank of Omaha, *supra.* Therefore Westroads could not properly charge plaintiffs' accounts on the basis of the forged withdrawal slips.

The fact that Westroads made the cashier's checks payable to plaintiffs' guardian does not permit it to escape liability to plaintiffs. The payee or true owner of a check which bears a forged endorsement may recover from a drawee bank which has paid the check on the forged endorsement under section 3-419, U. C. C. That section provides that an instrument is converted when it is paid on a forged endorsement, and that the measure of the drawee's liability is the face amount of the instrument. The payee or owner of a cashier's check may clearly recover from the bank which issues the cashier's check and pays it over a forged endorsement of the payee. See, Twellman v. Lindell Trust Co., 534 S. W. 2d 83 (Mo. App., 1976); Myers v. First National Bank of Scotia, 345 N. Y. S. 2d 204, 42 App. Div. 2d 657 (1973); Taylor v. Equitable Trust Co., 269 Md. 149, 304 A. 2d 838 (1973); Jerman v. Bank of America, 7 Cal. App. 3d 882, 87 Cal. Rptr. 88 (1970).

It can be seen that Westroads could not properly charge plaintiffs' accounts either by means of the forged withdrawal slips or by payment of the cashier's checks, which bore forged endorsements of plaintiffs' guardian. It should be noted that a drawee bank has certain defenses under the Uniform Com-

mercial Code, such as negligence on the part of a person who substantially contributes to an unauthorized signature, or failure to comply with the duties imposed upon customers of banks. See § § 3-406 and 4-406, U. C. C. Westroads, however, did not raise such defenses in its pleadings or during the proceedings in the District Court, and therefore such issues are not present in this case.

Although Westroads was properly held liable to plaintiffs, it was error for the trial court to enter judgment in favor of Center Bank on Westroads' cross-claim. Section 4-207, U. C. C., provides that: "(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that (a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; * * *.'' Under this provision, a collecting bank obtaining payment for an item bearing a forged endorsement is liable to the payor or drawee bank upon its warranties. The first bank in the collection chain must make sure that the endorsement on a check is valid, as it is in the better position to insure that one presenting a check has good title. See, Federal Deposit Ins. Corp. v. Marine Nat. Bank of Jacksonville, 303 F. Supp. 401 (M. D. Fla., 1969), affirmed, 431 F. 2d 341 (5th Cir., 1970); Abraham v. Moore & Schley, 18 U. C. C. Rptr. Serv. 1023 (N. Y., 1976); Birmingham Trust Nat. Bank v. Central Bank & Trust Co., 49 Ala. App. 630, 275 So. 2d 148 (1973), cert. den., 290 Ala. 362, 275 So. 2d 153 (1973); Thieme v. Seattle-First Nat. Bank, 7 Wash. App. 845, 502 P. 2d 1240 (1972); First Federal Savings & Loan Assn. of New Bern v. Branch Banking & Trust Co., 282 N. C. 44, 191 S. E. 2d 683 (1972).

Center Bank contends that it is not liable to Westroads under section 4-207, U. C. C., for three reasons.

First, it relies on section 3-405, U. C. C., which provides: "(1) An indorsement by any person in the name of a named payee is effective if (a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or (b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or (c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest." Center Bank contends that the endorsement of the cashier's checks in this case was effective under this section.

A careful reading of section 3-405, U. C. C., as well as cases interpreting that section, indicates that it is inapplicable in the present case. Subsection (1) (a) is not applicable because no "imposter" is present. " 'Imposter' refers to impersonation, and does not extend to a false representation that the party is the authorized agent of the payee. The maker or drawer who takes the precaution of making the instrument payable to the principal is entitled to have his indorsement." Comment 2, § 3-405, U. C. C. In the present case, Savin did not pose as plaintiffs' guardian, but acted, or purported to act, as their agent. Westroads took the precaution of making the cashier's checks payable to plaintiffs' guardian, and was entitled to her endorsement. The imposter rule is not applicable. See, Thieme v. Seattle-First Nat. Bank, *supra;* East Gadsden Bank v. First City Nat. Bank of Gadsden, 50 Ala. App. 576, 281 So. 2d 431 (1973); Brady on Bank Checks, § 15.19, p. 336 (Supp., 1977).

Subsections (1) (b) and (c) of section 3-405, U. C. C., are also not applicable, as they apply to a person signing as or on behalf of a maker or drawer, or to an agent or employee of the maker or drawer. In the present case Westroads was the maker or

drawer of the cashier's checks. Savin was not an agent or employee of Westroads, nor was he signing the checks as or on behalf of Westroads. Center Bank, however, contends that Savin procured the cashier's checks by use of forged withdrawal slips, and that therefore his intention that the named payee on the cashier's checks should have no interest in the instrument is controlling and section 3-405, U. C. C., is applicable. Center Bank relies on United States Nat. Bank v. Bank of America, 264 Cal. App. 2d 871, 71 Cal. Rptr. 6 (1968), in support of this proposition. In that case the court held that an endorsement on a cashier's check was effective under section 3-405, U. C. C., where the purchaser of a cashier's check obtained it from the issuing bank in exchange for a personal check which bore the name of a nonexistent payee. The cashier's check was made payable to the same nonexistent payee, and given to a representative of the purported payee, who subsequently deposited it and received the proceeds at another bank. The court held that the intent of the representative, and not the intent of the bank issuing the cashier's check, was controlling, as the drawee bank had issued the cashiers' check in exchange for a check bearing the name of a nonexistent payee, and had not inquired as to the existence of the payee. Section 3-405, U. C. C., was found applicable when the drawee bank sought to collect from the depository bank on the ground of breach of warranty. United States Nat. Bank v. Bank of America, *supra,* is not applicable to the present case. Westroads did not issue the cashier's checks to a payee who was not identifiable, nonexistent, or unknown to it, but issued it to its own customer. In such a case, it was entitled to the proper endorsement of the existing and identifiable payee. See Thieme v. Seattle-First Nat. Bank, *supra.*

Center Bank next contends that under section 3-418, U. C. C., Westroads' payment of the cashier's

checks was final, and that therefore the warranty provisions of section 4-207, U. C. C., do not apply. This contention is clearly erroneous. Sections 3-418 and 4-213, U. C. C., establish when payment on a negotiable instrument or check becomes final in favor of a holder in due course, but Center Bank in this case is not a holder in due course. A bank is not a holder as defined in section 1-201, U. C. C., and therefore not a holder in due course as defined under section 3-302, U. C. C., when it receives a check bearing a forged endorsement. See, Tubin v. Rabin, 533 F. 2d 255 (5th Cir., 1976); Riggs Nat. Bank of Washington, D. C. v. Security Bank N. A., 10 U. C. C. Rptr. Serv. 460 (D. C. Super., 1972); Salsman v. National Community Bank of Rutherford, 102 N. J. Super. 482, 246 A. 2d 162 (1968), affirmed, 105 N. J. Super. 164, 251 A. 2d 460; Brady on Bank Checks, § 5.1, p. 87. When a collecting bank receives a check bearing a forged endorsement and processes it through banking channels, the warranties set forth in section 4-207, U. C. C., apply, and the fact that the drawee bank has paid the check does not bar it from recovery under the warranties of the collecting bank on the ground that final payment has been made. White & Summers, Uniform Commercial Code, § 16-1, p. 519 (1972).

The final contention of Center Bank is that section 3-406, U. C. C., precludes Westroads from recovering on Center Bank's warranties of endorsement. That section provides: "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business." This section establishes no liability, but creates a conditional estoppel

which shields a bank from liability where a drawer's negligence substantially contributes to a forgery or alteration. Hermetic Refrig. Co., Inc. v. Central Valley Nat. Bank, 493 F. 2d 476 (9th Cir., 1974).

Center Bank relies on the pre-Code case of Connecticut Sav. Bank of New Haven v. First Nat. Bank & Trust Co. of New Haven, 138 Conn. 298, 84 A. 2d 267 (1951). In that case the court held that a bank which delivered a check, payable to its customer, to the purported agent of the customer upon presentation of an obviously altered withdrawal slip, and which bank itself altered the withdrawal slip, could not recover from drawee bank on which it had drawn the check. Although the case generally supports the position of Center Bank, it did not involve the issue of warranty of endorsements.

More recent cases decided under section 3-405, U. C. C., are persuasive that Center Bank may not escape liability in this case. In Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 491 F. 2d 192 (8th Cir., 1974), an attorney obtained checks payable to his client from an investment firm by presenting to the firm stock certificates which bore the forged endorsement of the client. The attorney had previously opened an account at the firm in the name of his client, but the firm had never dealt with the client herself or checked the attorney's authority. The attorney presented the checks to banks after he had forged the endorsements of the payee, and the checks were ultimately paid by the drawee bank in which the investment firm had its checking account. When the investment firm sought to recover from the drawee bank for paying its checks over forged endorsements, the drawee bank defended on the ground that the investment firm had substantially contributed to the forgeries under section 3-405, U. C. C., and therefore could not recover. The court rejected the defense of the drawee bank, finding that the use of the words "substantially contributes" in

section 3-406, U. C. C., "necessarily requires some showing of a casual relationship equivalent to the 'substantial factor' test generally applied in the law of negligence." The court found that the situation created by the issuance of the checks by the investment firm was not enough to constitute a "substantial factor" in bringing about the forgery, as its negligence was related only to the issuance of the checks, and not to the forgery itself. The court concluded: "In the final analysis, we are convinced that the meaning of section 3-406 is best reflected by precluding a drawer from recovery under these or similar circumstances only where his negligent conduct contributes to the *forgery,* not merely to the unwarranted issuance of the checks, such as in the situation before us." Other courts have approved reasoning of the Bagby case. See, Twellman v. Lindell Trust Co., *supra*; Commonwealth of Pennsylvania v. National Bank & Trust Co. of Central Pennsylvania, 20 U. C. C. Rptr. Serv. 138 (Pa., 1976).

A case directly on point is Society Nat. Bank of Cleveland v. Capital Nat. Bank, 30 Ohio App. 2d 1, 281 N. E. 2d 563 (1972). In that case a customer of the plaintiff bank drew two checks payable to ABS Company, and delivered them to a selling agent of the payee company. The agent forged the payee's endorsement and obtained from the plaintiff bank two cashier's checks, payable to the ABS Company. The agent then forged the endorsements on the cashier's checks and deposited them in the defendant bank, which presented them to, and received payment from, the plaintiff drawee bank. The drawee bank had to reimburse its customer since the checks had been paid over forged endorsements, and it then sought to recover from the defendant collecting bank on the basis of the latter's warranties. The court found that issuing of the cashier's checks was not the cause of any monetary loss to the parties, but rather that the forged endorsements on the cashier's

checks were the cause. It therefore held that the drawee bank which had issued the cashier's checks could properly recover from the collecting bank. See, also, First Nat. Bank v. Liberty Nat. Bank & Trust Co., 392 P. 2d 747 (Okla., 1964); First Nat. Bank of Mineola v. Farmers & Merchants State Bank, 417 S. W. 2d 317 (Tex. Civ. App., 1967); First Nat. City Bank of New York v. Manufacturers Trust Co., 240 N. Y. S. 2d 669, 39 Misc. 2d 428 (1963).

In Thieme v. Seattle-First Nat. Bank, 7 Wash. App. 845, 502 P. 2d 1240 (1972), in a factual situation similar to that in Society Nat. Bank of Cleveland v. Capital Nat. Bank, *supra,* the court also found that the drawee bank which issued a cashier's check in exchange for a check with a forged endorsement, where the cashier's check was made payable to the same payee as that on the check for which it was exchanged, could recover from a collecting bank. See, also, Myers v. First Nat. Bank of Scotia, 345 N. Y. S. 2d 204, 42 App. Div. 2d 657 (1973), for a similar result in a case which has facts analogous to those presented in this case.

The above authorities clearly indicate that Center Bank is liable to Westroads on its warranties of endorsements of the cashier's checks involved in this case. Such liability is absolute, absent the defenses discussed above, and those defenses are not applicable in the present case. Therefore we hold that the District Court erred in granting judgment in favor of Center Bank on Westroads' cross-claim.

The final issue in this case is whether the District Court erred in overruling Westroads' motion for new trial on the ground of newly discovered evidence. Section 25-1142, R. R. S. 1943, provides that a new trial shall be granted for the cause of "newly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial." In Pence v. Liermann, 191 Neb. 614, 216 N. W. 2d 746 (1974), this

court stated that the party moving for a new trial on such ground must show that the evidence came to him since the trial and was not equally available to him previous to that trial, and was not simply discovered by exercise of belated diligence. Newly discovered evidence is not sufficient reason for a new trial of a cause if diligence before the trial would have produced notice or knowledge of the alleged recently discovered evidence.

In the present case, the evidence on which Westroads relies to support its motion for new trial could easily have been discovered by the exercise of diligence prior to trial. Westroads and its attorneys had in their possession, prior to trial, a letter stating that a file of Savin's had been discovered, and that the file contained materials relating to the guardianship funds. Although the letter did not specifically refer to the copy of the authorization signed by Barbara, Westroads was put on notice that a file existed which might contain relevant information. Westroads made no attempt to see the file, nor was it denied access to it. In such circumstances, the evidence on which Westroads relies was not evidence which it could not, with reasonable diligence, have discovered and produced at trial. Therefore the trial court was correct in overruling Westroads' motion.

We note that plaintiffs cross-appealed, contending that the trial court erred in dismissing their claim against Center Bank. However, in their brief and oral argument, plaintiffs concede and state that if this court affirms the holding of the trial court that Westroads had no right to charge plaintiffs' accounts for the amount of the forged checks and affirms plaintiffs' judgment against Westroads, then it will not be necessary to also enter judgment in their favor against Center Bank. In view of our conclusions, as set forth above, it is unnecessary for us to determine whether plaintiffs are also entitled to a

judgment against Center Bank, as we have given Westroads a judgment over against Center Bank for the amount of the judgment against Westroads, based on its warranties of endorsement as a collecting bank.

For the reasons given above, the judgment in favor of plaintiffs against Westroads is affirmed. The judgment in favor of Center Bank on Westroads' cross-claim is reversed and the cause remanded with directions to the District Court to enter judgment in favor of Westroads on its cross-claim against Center Bank for the same amount Westroads is required to pay plaintiffs on their judgment against Westroads.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED WITH DIRECTIONS.