[No. 4780–1. Division One. October 10, 1977.]

PARSONS TRAVEL, INC., *Appellant,* v. EDITH M. HOAG, ET AL, *Respondents.*

*Abbott, Lant & Fleeson* and *David A. Nichols,* for appellant.

*Roehl & Roehl, Carl Roehl, Sr.,* and *William P. Roehl,* for respondents.

Andersen, J.—
FACTS OF CASE

This is a controversy between a depositor and its bank to determine which of them must bear the loss resulting from checks forged on the depositor's account by the depositor's bookkeeper and paid by the bank.

Parsons Travel, Inc. (depositor) is in the travel agency business. Its main office is in Bellingham and it has offices in other northwestern Washington locations. It maintained a checking account in the Northwestern Commercial Bank (bank) in Bellingham. The depositor's books were handled by its full charge bookkeeper, Edith M. Hoag (bookkeeper), whose duties included keeping the check register, writing checks, picking up the bank statements and cancelled checks at the bank each month and reconciling the statements and cancelled checks with the check register.

Four persons were authorized to sign checks drawn on the depositor's account and their signatures were on the authorized signature card held by the bank. The bookkeeper had no authority to sign checks and her signature was not on the bank's signature card. She was, however, well known at the bank, where she often went in connection with her employer's business.

The bookkeeper worked for the travel agency for somewhat over 2 years. During the last 6 1/2 months of her employment, she forged the signature of one of the authorized signators on her employer's account on 31 checks, which she wrote on that account. The forgeries totaled $28,184.51. Most of the checks she made payable to herself. A few of them were made payable to third persons, and in such cases, she also forged their signatures on the checks endorsing them over to her. She made one check for $742.50 payable to Mrs. E. Linse (her previous married name) and endorsed that name on it, but on all the other checks, she endorsed her present name. She cashed all of the forged checks at the bank or deposited them in her personal account at the bank.

The bookkeeper concealed her scheme by the use of various artifices, including removing the cancelled forged checks from the envelope containing the cancelled checks and bank statement when she picked them up from the bank each month. A few days after her employment was terminated, the scheme was discovered by the new bookkeeper and the bank was notified.

The depositor sued the bookkeeper and the bank for its $28,184.51 loss. The bookkeeper pleaded guilty to a charge of forgery, and in this civil action, a default judgment was taken against her for the full amount.

It appears that cross summary judgment motions were filed by both the depositor and the bank during pretrial proceedings. The briefs herein note that these motions resulted in the depositor's motion for summary judgment being denied and the bank's summary judgment motion being granted to the extent that the depositor's claims based on all of the forgeries, except the last few, were dismissed. The briefs indicate that such dismissal was on the basis of RCW 62A.4–406(4) requiring that the depositor report any forged instruments to the bank within 60 days of the time that the statement and instruments are made available to the depositor. In any event, the only forged checks referred to in the trial court's findings of fact as being in issue at the trial totaled the sum of $13,309.23.

Following trial, findings of fact were entered wherein the trial court found that the depositor was negligent in connection with all of the forged checks in issue, except the $742.50 Linse check, the reason being that the bank teller had not required any identification of the payee. As to the other checks, the trial court found that "said checks were cashed in good faith by Defendant bank, and in accordance with reasonable commercial standards of said bank's business."

Thereupon judgment was entered in the depositor's favor against the bank for only the $742.50 that the bank had paid out on the Linse check. The depositor appeals from this judgment. The bank has not cross–appealed.

The depositor's several assignments of error raise a single basic issue.

## ISSUE

Was the bank negligent as a matter of law in paying forged checks drawn on its depositor's account?

## DECISION

CONCLUSION. Whether or not the bank was negligent is not a question of law in this case, but is a question of fact. We have reviewed the entire record presented and conclude that there is substantial evidence therein to sustain the trial court's finding that the bank was not negligent in cashing any of the forged checks at issue, except the $742.50 Linse check.

The bank defended on the basis that the depositor's negligence was an affirmative defense under the code. RCW 62A.3–406; RCW 62A.4–406. The trial court found that the depositor was negligent in a number of particulars and that such negligence substantially contributed to the forgeries. By its reply brief, the depositor agrees that the trial court was entitled to find from the evidence that the depositor was negligent. We therefore do not further address the matter of the depositor's negligence which is thus conceded for the purposes of this appeal.

■■ We turn then to the question of the bank's negligence. The depositor's argument here is much the same as that made by plaintiff–depositor in *Terry v. Puget Sound Nat'l Bank,* 80 Wn.2d 157, 160, 492 P.2d 534 (1972):

Plaintiffs also argue that they were entitled to a directed verdict in that they had established by their evidence a lack of ordinary care on the part of the bank as a matter of law, thus preventing application of the affirmative defense afforded by RCW 62A.3–406 and 62A.4–406. RCW 62A.4–406(3).

This is referred to in 2 R. Anderson, *Uniform Commercial Code* § 3–406:5 (2d ed. 1971) as the principle of "counter-estoppel" and is there summarized as follows:

A person will not be precluded from denying that his signature has been forged when the person asserting that there should be such estoppel is himself negligent. Thus, the defense that negligence substantially contributes to the making of an unauthorized signature is not available to one who pays an instrument under circumstances that do not conform to reasonable commercial standards of the payor's business, . . .

(Footnote omitted.) *See also* 3 R. Anderson, *Uniform Commercial Code* § 4–406:7 (2d ed. 1971).

Whether such negligence exists on the part of the bank as will constitute a counterestoppel is a question of fact. *Terry v. Puget Sound Nat'l Bank, supra*; Official Comment 7, RCWA 62A.3–406; 2 R. Anderson, *Uniform Commercial Code* § 3–406:8 (2d ed. 1971).

Here the trial court found the following with respect to the bank's payment of the forged checks:

That testimony was given on behalf of Defendant bank which indicates that the tellers of that bank were properly trained either by a vocational school training or on–the–job training, or a combination of both types of training, for their work; that a signature card containing the authorized signatures on Plaintiff's account was attached to the file dividers where the checks were filed, and that the tellers were instructed to compare the signature on each check drawn on Plaintiff's account with the authorized signature on the signature card, and that this procedure was followed by Defendant bank in checking the signatures on the checks cashed by Defendant HOAG. That all witnesses testified that the handwriting of Defendant HOAG and that of the authorized signer, Cora Chads, was very similar to the handwriting of the maker on the forged checks. That the president of Plaintiff corporation, Ted Parsons, when shown samples of the handwriting of Edith Hoag and Cora Chads, admitted that the handwriting of the two persons was very similar, and that he could not distinguish one from the other. That no fault was established by the evidence on the part of Defendant bank in the cashing of the checks forged by Edith M. Hoag, with one exception hereinafter set forth [*i.e.*, the Linse check]. That said checks were cashed in

good faith by Defendant bank, and in accordance with reasonable commercial standards of said bank's business. Finding of fact No. 10.

█ We cannot substitute our findings for those of the trial court where those findings are supported by substantial evidence. This is not only a matter of judicial policy, but is also a constitutional mandate. *Teratron General v. Institutional Investors Trust,* 18 Wn. App. 481, 569 P.2d 1198 (1977). The above set out finding of fact by the trial court is supported by substantial evidence in the record. We will not upset the trial court's interpretation of the testimony when any reasonable view of the evidence substantiates a questioned finding, as it does here. *Kaas v. Privette,* 12 Wn. App. 142, 145, 529 P.2d 23 (1974).

The depositor's further argument that the bank's negligent cashing of earlier checks forged on the depositor's account was a proximate cause of the later forgery losses fails because it is premised on the bank being negligent, and as we have here held, the trial court did not err when it found that the bank was not negligent, except in regard to the Linse check. There is nothing in the fact that the bank teller, in cashing the Linse check, failed to require identification of the payee, which would lead us to conclude as a matter of law that if such identification had been requested by the teller on that occasion, the subsequent forgery losses would not have occurred.

█ We are unable to consider the depositor's assignments of error insofar as they relate to determinations made by the trial court on the earlier cross motions for summary judgment. As explained in *Gaupholm v. Aurora Office Bldgs., Inc.,* 2 Wn. App. 256, 257, 467 P.2d 628 (1970),

> an appellate court may only examine the record which was before the trial court, no more, no less. This record is identified and submitted in one of two ways: either by incorporation in the statement of facts, or by identifying the matter with particularity in the summary judgment and including it in the transcript.

*Accord, American Universal Ins. Co. v. Ranson,* 59 Wn.2d 811, 815, 370 P.2d 867 (1962); *Harris v. Kuhn,* 80 Wn.2d 630, 631, 497 P.2d 164 (1972); *Clark v. Tacoma Housing Authority,* 11 Wn. App. 518, 519, 523 P.2d 1200 (1974). The complete record which was before the trial court when it considered the summary judgment motions has not been identified and submitted in either of these two ways, and we are unable to tell what record was before the trial court at the time it ruled on the motions for summary judgment. Affirmed.

FARRIS, C.J., and CALLOW, J., concur.