[No. 5019-1. Division One. December 4, 1978.]

SEATTLE–FIRST NATIONAL BANK, *Respondent,* v.
PACIFIC NATIONAL BANK OF WASHINGTON,
*Appellant.*

48

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Philip A. Talmadge, Martin T. Crowder, Perkins, Coie, Stone, Olsen & Williams,* and *Ramer B. Holtan, Jr.,* for appellant.

*Davis, Wright, Todd, Riese & Jones* and *Bradley C. Diggs,* for respondent.

Dore, J.—Pacific National Bank of Washington (Pacific) appeals a judgment awarding Seattle–First National Bank (Sea–First) $52,492.72. Sea–First cross–appeals the trial court's failure to grant attorneys' fees and its computation of interest on the judgment.

## Issues

Issue 1: Whether Pacific breached its warranty of good title (RCW 62A.4–207(1)(a)) by presenting 10 cashier's checks for payment with unauthorized endorsements and receiving payment thereon from Sea–First.

Issue 2: Whether Pacific can raise the "padded payroll" defense (RCW 62A.3–405(1)(c)) against Sea–First's breach of warranty of title claim (RCW 62A.4–207(1)(a)).

Issue 3: Whether Pacific's breach of warranty was the proximate cause of Sea–First's loss.

Issue 4: Whether equitable estoppel is available to Pacific.

## Issues on Cross Appeal

Issue 1: Whether the trial court erred in refusing to award Sea–First attorneys' fees.

ISSUE 2: Whether the trial court erred in computing Sea–First's damage for the purpose of assessing interest from the date of demand for reimbursement (December 24, 1974) rather than from the date of payment of each cashier's check (checks cashed periodically from March 15, 1974, through July 30, 1974).

## FACTS

Sea–First and Pacific are national banking associations doing business in Washington. Between March 15 and July 30, 1974, Sea–First issued 10 cashier's checks. The payee on 9 of the 10 checks was Sumner Motors, Inc., and on the 10th check was Sumner Ford. Six of the 10 checks were issued for the purchase of automobile leases which appeared to have been entered into between Sumner Motors, Inc., and certain individuals. The remaining 4 checks were issued for the purchase of conditional sales contracts which appeared to have been made between Sumner Motors, Inc., and certain individuals.

Sumner Motors, Inc., had an agreement (entitled Firstlease Dealer Agreement) with Sea–First under which certain automobile leases could be presented to Sea–First for purchase. John Sanders, a sales manager for Sumner Motors, Inc., was the "leasing representative" named under the agreement. The six leases were purchased by Sea–First pursuant to this agreement. Sumner Motors, Inc., from time to time also sold to Sea–First conditional sales contracts which had been executed for the purchase of automobiles.

The six leases and four conditional sales contracts for which the cashier's checks were issued were in fact fictitious in that they represented nonexistent automobiles and contained unauthorized signatures of lessees or purchasers. These fictitious documents were presented to Sea–First by John Sanders, purportedly on behalf of Sumner Motors,

Inc. Sea–First intended Sumner Motors, Inc., to receive the checks which it issued in payment. Sea–First delivered checks to John Sanders who was authorized to receive checks on behalf of Sumner Motors, Inc.

After receiving the 10 checks, John Sanders endorsed each of them with a stamp, as Sumner Motors, rather than Sumner Motors, Inc. The stamped endorsement was as follows:

44 002 108
Pay to the Order of
Parkland Banking Center
Pacific National Bank of Washington
Tacoma, Washington
*Sumner Motors*

(Italics ours.) The endorsement stamp used to affix the stamped language was not an endorsement stamp of "Sumner Motors, Inc." and its use was not authorized by the corporation. Such endorsement of corporate checks was unauthorized, and was not the endorsement of the corporation.

Each of the cashier's checks, after being stamped with the unauthorized endorsement, was deposited by Sanders at Pacific's Parkland Banking Center Branch.

Pacific account No. 44 002 108, to which the checks were deposited, was a sole ownership business account designated "John D. Sanders d/b/a Sumner Motors." Pacific credited the amount of the checks to the account, and the funds were subsequently withdrawn by Sanders.

Between March 15, 1974, and August 8, 1974, Pacific endorsed each of the cashier's checks wherein they guaranteed the prior endorsement and presented them to Sea–First for payment. Pacific placed the following endorsement on each of the checks:

Pay Any Bank P.E.G.
Pacific National Bank,
of Washington
Seattle, Washington

After presentation of these cashier's checks for payment, Sea–First paid to Pacific the full amount ($70,973.88) for which the checks were drawn. Sea–First relied upon the endorsement of Pacific in accepting and paying each of the cashier's checks. Neither Pacific nor the person to whose account these funds were credited (John Sanders) were entitled to the funds paid by Sea–First to Pacific.

Following issuance of the checks, Sea–First from time to time received amounts of money which purported to be lease and/or contract payments. These payments totaled $18,481.16, and were credited against the amount paid out by Sea–First for the fictitious contracts and leases, leaving a balance of $52,492.72.

Upon discovery of the fictitious nature of the leases and contracts, Sea–First demanded payment (December 1974) from Pacific of the unpaid balance plus interest. Pacific refused to pay and Sea–First sued.

#### DECISION

ISSUE 1: Pacific's breach of warranty (RCW 62A.4–207(1)(a)).

Sea–First brought this action based on a breach of warranty of good title theory.

RCW 62A.4–207(1)(a) provides:

> Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that
> (a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; . . .

This section "is intended to give the effect presently obtained in bank collections by the words 'prior endorsements guaranteed' in collection transfers and presentments between banks. The warranties and engagements arise automatically as a part of the bank collection process." Official Comment 2, RCWA 62A.4–207. Here, Pacific actually stamped prior endorsements guaranteed (P.E.G.) on

the checks it presented and received payment from Sea–First.

■ *Bagby v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 491 F.2d 192, 199 (8th Cir. 1974), states:

> Furthermore, although the Uniform Commercial Code does not define "good title," the draftsmen have made it clear that a good title warranty is a warranty of the "genuineness of endorsements," . . .

A similar characterization of the warranty of title was established in *Thieme v. Seattle–First Nat'l Bank,* 7 Wn. App. 845, 849–50, 502 P.2d 1240 (1972):

> Under the Uniform Commercial Code adopted in this state, RCW 62A.3–417 and RCW 62A.4–207(1), a bank that accepts and pays a check upon unauthorized or forged endorsement of the payee warrants to subsequent transferees the validity of that endorsement and may be held liable upon that warranty.

(Footnotes omitted.)

The purpose of the warranty is to place on the bank taking an instrument from a person making an unauthorized endorsement[1] the responsibility for collecting from that person. *Bank of the West v. Wes–Con Dev. Co.,* 15 Wn. App. 238, 548 P.2d 563 (1976). In *Bank of the West,* the court held that the Bank of the West, as a collecting bank, was liable to Bank of Everett, as payor bank, for breach of warranty of title on a check presented by Bank of the West with a forged endorsement. The court stated at page 241:

> When a check is negotiated on the basis of a forged endorsement, the drawee bank may not charge the drawer's account, but it does have the right to recover payment of the check from a prior collecting bank. A collecting bank that presents and receives payment for a check containing a forged endorsement is liable for breach of the warranty of good title. RCW 62A.4–207(1)(a). . . .

---

[1]The code does not define forgery but defines an unauthorized signature or endorsement as "one made without actual, implied or apparent authority and includes a forgery." RCW 62A.1–201(43). Therefore, any forged endorsement would necessarily be an unauthorized endorsement.

Conversely, a collecting bank has rights of recovery from prior parties for breach of the warranties of good title and genuineness of signatures. . . .

The recrediting of [the drawer's] account, the recovery by the drawee bank from the collecting bank, and the judgment in favor of the collecting bank against the forger is the progression foreseen by the Uniform Commercial Code. Rights of recovery continue until the party taking the check from the forger is reached.

This warranty exists even when, as in the subject case, a cashier's check is involved.

*The issuance of the cashier's check did not remove the responsibility . . . to ascertain that the check was properly endorsed by the named payee.* Thus, the situation as to the payee was no different than if the original check had been presented . . . for payment; or, the original check had been certified and presented.

(Italics ours.) *Thieme v. Seattle–First Nat'l Bank, supra* at 850–51.

██ We reject Pacific's contention that a successful action for a breach of the UCC warranty of good title (§ 4–207) depends upon whether the named payee actually had an interest in the checks that could have been asserted. Rather, we believe a breach of the UCC warranty of good title occurs when, as here, a collecting bank (Pacific) presents and receives payment from a drawee bank (Sea–First) on checks containing forged or unauthorized endorsements.

Therefore, we hold that Pacific breached its warranty of good title to Sea–First when Pacific presented and received payment from Sea–First on 10 cashier's checks whose prior endorsements, although guaranteed by Pacific, were in fact unauthorized.

ISSUE 2: Pacific's failure to fulfill the requirements of the "padded payroll" defense (RCW 62A.3–405-(1)(c).

Pacific raised the "padded payroll" defense (RCW 62A.3–405(1)(c)) in response to Sea–First's breach of warranty of good title claim.

RCW 62A.3-405(1)(c) states:

An endorsement by any person in the name of a named payee is effective if

. . .

(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

In order for Pacific to avail itself of the protection of RCW 62A.3-405(1)(c), it would have had to fulfill the following four requirements: (1) That Sanders endorsed the checks in the name of the named payee, Sumner Motors, Inc., or Sumner Ford; (2) that Sanders was an agent or employee of Sea-First; (3) that Sanders supplied the name of the payee to Sea-First; and (4) that Sanders did not intend for Sumner Motors, Inc., to have any interest in the checks.

The trial court found that Pacific had only fulfilled the fourth requirement and could not avail itself of the protection afforded by RCW 62A.3-405(1)(c).

In the subject case, 9 of the 10 cashier's checks were made payable by Sea-First to Sumner Motors, Inc., and one of the checks was made payable to Sumner Ford. Under the circumstances of the subject case, we find that Sanders did not endorse the checks "in the name of the named payee" as specified by the statute (RCW 62A.3-405(1)(c)). As stated in *Twellman v. Lindell Trust Co.,* 534 S.W.2d 83, 92-93 (Mo. Ct. App. 1976):

The only reason we decide that § 3-405(1)(c) does not apply here as a matter of law is because the forged endorsement was not "in the name of a named payee" as specified by the statute. . . . In order for § 3-405(1)(c) to apply, the forged endorsement must be in the *exact name of the named payee.*

(Italics ours.)

We refuse to adopt Pacific's argument that other provisions of the code make an endorsement effective even if it does not precisely mirror the payee designation and, therefore, all that is required under RCW 62A.3-405(1)(c) is that the forged endorsement not be ostensibly deficient. The

objective test adopted in *Twellman v. Lindell Trust Co., supra,* requiring the endorsement to be in the exact name of the payee, is the only reasonable standard to apply to allow the transformation which is accomplished by a successful assertion of the defense under RCW 62A.3–405(1)(c), *i.e.,* the change of an ineffective endorsement into that of an effective endorsement.

■ Additionally, we agree with the trial court's determination that no agency relationship existed between Sea–First and Sanders. The burden of establishing an agency rests upon the party who asserts it. *Moss v. Vadman,* 77 Wn.2d 396, 463 P.2d 159 (1969). Agency is a legal concept whose existence depends upon the establishment of the specific factual elements of consent and control. *Moss v. Vadman, supra.*

The trial court specifically found that Sea–First did not control Sanders. Finding of fact No. 20 states:

> When John Sanders supplied fictitious leases and contracts, he was in no way acting as an agent of plaintiff. Plaintiff did not so rely on or so control Sumner Motors, Inc. and John Sanders as to create an agency.

There was substantial evidence to support the trial court's finding. The lease agreement (Firstlease Dealer Agreement), exhibit 6, specifically supports the trial court's finding. The lease agreement provided:

> (2) Leasing Representative. *Bank agrees to train and instruct an employee of Dealer (hereinafter called the "Leasing Representative") in the operation of Bank's system.* The Leasing Representative shall be one who is mutually acceptable to Bank and Dealer. The Leasing Representative shall be *an employee of Dealer,* and Bank shall be under no obligation to compensate or reimburse him for services or for expenses incurred by him. *Dealer shall have exclusive right to control and direct the activities of the Leasing Representative. Bank from time to time may give advice and consultation concerning matters having to do with leasing business, but neither Dealer nor the Leasing Representative shall be obliged to conform to or comply with such advice or consultation.*

(Italics ours.) Pacific failed to meet its burden in establishing the required factual elements to establish an agency.

Having found that Sanders did not endorse the checks in the name of the named payee nor was Sanders the agent of Sea–First, we, therefore, hold that Pacific failed to fulfill all requirements of the "padded payroll" defense (RCW 62A.3–405(1)(c)) and such defense is not available to Pacific.

Issue 3: Proximate cause.

 Pacific's argument, that it is not liable to Sea–First since Pacific's payment over unauthorized endorsements was not the proximate cause of Sea–First's loss, is not applicable. *See Twellman v. Lindell Trust Co., supra.* As stated in *Twellman,* at page 88:

> The first of the substantive arguments made by Lindell Trust and Continental is that they are not liable to plaintiff since their payment over the forged endorsement was not the proximate cause of plaintiff's losses. Plaintiff's loss is said to be due to his dealings with Londe and the failure of Londe's post–dated check of December 15, to cover plaintiff's note. It is true that if Londe's check had cleared Lindell Trust would have applied its proceeds to pay off plaintiff's $50,000 note of December 15 and plaintiff would have suffered no loss. But Londe's wrongdoing is not what is at issue in this case. We are concerned with the liability of two banking institutions who wrongfully dealt with a negotiable instrument. . . . In view of the purpose of the U.C.C. to promote uniformity and certainty and the negotiability of instruments such as the Treasurer's check in this case, we do not think that a collateral issue of proximate cause should apply. Though the U.C.C. sets out various defenses to suits on a negotiable instrument, it does not mention proximate cause. We feel that only the specific U.C.C. defenses should be considered in a suit on this instrument.

We agree with *Twellman* and adopt its reasoning herein.

Issue 4: Equitable estoppel not available to Pacific.

Pacific contends Sea–First should be equitably estopped from any recovery. We disagree.

▉▉ In *Atlas Bldg. Supply Co. v. First Independent Bank,* 15 Wn. App. 367, 373, 550 P.2d 26 (1976), this court stated:

> In any event, defendant's equitable estoppel argument must fail. Before an estoppel will be applied, the party seeking to invoke the estoppel must itself be free from fault.

(Citations omitted.) Pacific is not free from fault. Pacific had a duty to ascertain whether the endorsements in question were authorized. *Thieme v. Seattle–First Nat'l Bank,* 7 Wn. App. 845, 502 P.2d 1240 (1972). Pacific's failure in that regard precludes it from invoking the equitable estoppel defense.

NEITHER OF THE AFFIRMATIVE DEFENSES FOR NEGLIGENCE (RCW 62A.3–406) OR SEA–FIRST'S FAILURE TO INVESTIGATE AND DISCOVER UNAUTHORIZED ENDORSEMENTS (RCW 62A.4–406) IS AVAILABLE TO PACIFIC.

Pacific contends the negligence defense (RCW 62A.3–406) is applicable in the instant case and precludes Sea–First's cause of action. We disagree.

RCW 62A.3–406 provides:

> Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who *pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.*

(Italics ours.)

▉ Official Comment 5, RCWA 62A.3–406 states:

> This section does not make the negligent party liable in tort for damages resulting from the alteration. Instead it estops him from asserting it against the holder in due course or drawee. . . . The holder or drawee is protected

by an estoppel, and the task of pursuing the wrongdoer is left to the negligent party.

This section (RCW 62A.3–406) protects parties who act in good faith and observe the reasonable commercial standards of their business. Therefore, if a bank takes or pays an altered check which ordinary banking standards would require the bank to refuse, that bank cannot take advantage of the estoppel. Official Comment 6, RCWA 62A.3–406. The determination of whether a bank in honoring or paying a particular check is negligent and consequently liable pursuant to RCW 62A.3–406 regardless of the depositor's negligence, is a question of fact. *Parsons Travel, Inc. v. Hoag,* 18 Wn. App. 588, 570 P.2d 445 (1977).

In the instant case the trial court made the following findings of fact:

Finding of fact No. 29:

> The defendant bank did not act in accordance with reasonable commercial standards when it deposited the checks in question to a sole ownership account belonging to John Sanders. The checks were made payable to a business corporation or firm, and were improperly endorsed for deposit to a sole ownership account of a different name. This was a violation of the defendant's own manual of operations, which in respect to deposits and endorsements conformed to reasonable commercial standards. The defendant bank's operation manual sets a standard that is in accordance with a reasonable commercial standard in the banking business.

Finding of fact No. 30:

> The defendant's teller, with proper training and instruction, should have noted and questioned the deposit of the checks which had been improperly endorsed, and she did not. The checks were deposited to John Sanders' sole ownership account, even though there was an improper endorsement.

These findings were supported by substantial evidence.

Therefore, we hold that the negligence defense (RCW 62A.3–406) is not available to Pacific.

Additionally, Pacific contends Sea–First had a duty to discover unauthorized endorsements (RCW 62A.4–406),

and its failure to do so is an effective affirmative defense to Sea–First's cause of action. Having upheld the trial court's determination that Pacific's actions were not in accordance with reasonable commercial standards, Pacific's contention is without merit. *See Parsons Travel, Inc. v. Hoag, supra.*

CROSS CLAIMS BY SEATTLE–FIRST

ISSUE 1: Attorneys' fees.

■ Sea–First contends the court erred in failing to award them attorneys' fees.

RCW 62A.4–207(3) states:

(3) . . . Damages for breach of such warranties or engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and *expenses related to the item, if any.*

(Italics ours.)

Official Comment 5, RCWA 62A.4–207 states:

The last sentence of subsection (3) provides that damages for breach of warranties or the engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible "plus finance charges and expenses related to the item, if any". The "expenses" referred to in this phrase may be ordinary collecting expenses and in appropriate cases could also include such expenses as attorneys fees.

Contrary to Sea–First's contention that attorneys' fees are mandated by RCW 62A.4–207(3), the language of the comment indicates that attorneys' fees would be granted at the discretion of the trial court. In the subject case, the trial court specifically stated that this case was not an appropriate case for an award of attorneys' fees. We do not find that the trial court abused its discretion in this matter.

ISSUE 2: Interest.

Sea–First assigns error to the trial court's conclusion that interest on amounts due from Pacific should run from the date of Sea–First's payment of the cashier's checks rather

than December 24, 1974, the date of Sea–First's first demand on Pacific.

 The rule in Washington is that interest prior to judgment is allowable when the amount claimed is liquidated. *See Prier v. Refrigeration Eng'r Co.*, 74 Wn.2d 25, 442 P.2d 621 (1968).

In the subject case, the trial court's uncontested findings of fact (Nos. 15 and 16) state:

Finding of fact No. 15:

Following issuance of the checks, plaintiff from time to time received certain amounts of money which purported to be lease payments or contract payments. These payments totalled $18,481.16, thus reducing the amount paid out by plaintiff for the contracts and leases to $52,492.72.

Finding of fact No. 16:

Upon discovery of the fictitious nature of the leases and contracts, plaintiff demanded payment from defendant of amounts paid plus interest, less reductions, but defendant refused to pay.

These undisputed findings show that the amounts of damage in question were never clearly known by Sea–First prior to the date demand was made on Pacific. These amounts of damage sustained could not have been computed with exactness or without opinion or speculation by Sea–First until the scheme of Sanders was uncovered and the payments stopped. Since the amount of the damage could not have been calculated with certainty, the trial court properly refused to allow prejudgment interest until such time as damages were known and the claim became "liquidated," *i.e.,* December 24, 1974, the date of Sea–First's demand on Pacific. We agree with the trial court.

Affirmed.

CALLOW and REED, JJ., concur.