**WYMORE STATE BANK, Appellee,**

v.

**JOHNSON INTERNATIONAL CO., Appellant,**

Seafirst Bank, (Seattle First National Bank) Appellee.

Ora L. Wilson.

**WYMORE STATE BANK, Appellee,**

v.

**JOHNSON INTERNATIONAL CO., Appellee,**

Seafirst Bank, (Seattle First National Bank), Appellant.

Ora L. Wilson.

Nos. 88–1575, 88–1636.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1988.

Decided April 25, 1989.

Daniel J. Duffy, Omaha, Neb., for appellant.

Jeffrey W. Jones, Topeka, Kan., and David D. Begley, Omaha, Neb., for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and STUART * Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Wymore State Bank's acceptance of checks bearing indorsements forged by an employee of Johnson International Company, and drawn on Johnson's checking account at Seattle First National Bank (Seafirst), raises issues concerning the applicability of the fictitious payee provisions of Nebraska statutes adopting the Uniform Commercial Code. *See* Neb.Rev.Stat. (U.C.C.) § 3–405. Johnson's employee had written the checks to payees, forged their indorsements, and deposited the checks into his account at Wymore. Wymore sought declaratory relief against Seafirst and Johnson to determine the extent of its liability for the payment and deposit of these checks, and Johnson and Seafirst filed various cross-claims and counterclaims. The district court granted Wymore's motions for summary judgment against Johnson and Seafirst and granted Seafirst's motion for summary judgment against Johnson. We reverse the district court's order granting Wymore's motion for summary judgment against Johnson and Seafirst, and affirm Seafirst's summary judgment against Johnson.

This case arises out of the actions of Howard Warford in forging indorsements on checks drawn on his employer's account and depositing the proceeds into his own account at Wymore. As an employee of Johnson, Warford's duties included the purchase of timber from various suppliers. Warford was authorized to prepare checks, drawn on Johnson's account at Seafirst, to pay the sellers. Throughout 1985 and 1986, Warford drew over 36 checks to named payees. Instead of delivering the checks, however, he forged the payees' in-

* The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

dorsements and deposited the checks into his own account at Wymore, called "Joinco." Wymore immediately credited Warford's account and sent the checks through normal banking channels for collection. Ultimately, Seafirst received the checks, debiting Johnson's account and crediting Warford's account for the amount of the checks. Warford died soon after he drafted the last check bearing a forged indorsement.

Upon discovering Warford's fraud, Johnson demanded that Seafirst re-credit its account in the amount of the checks Warford had deposited at Wymore in the Joinco account. Although Seafirst did not re-credit Johnson's account, it forwarded the checks to Wymore and demanded restitution for the sum of the checks bearing forged indorsements. Wymore refused the demand, and filed this complaint in the district court requesting declaratory relief.

In its complaint, Wymore requested a declaration that the forged indorsements were effective under Neb.Rev.Stat. (U.C.C.) § 3–405(1)(b),[1] and that neither Johnson nor Seafirst had any claims to the proceeds of the checks from Wymore. In response, both Seafirst and Johnson alleged that the indorsements were not effective, and were wholly inoperative under Neb.Rev.Stat. (U.C.C.) § 3–404(1). Both filed counterclaims against Wymore alleging that Wymore's actions in accepting the checks for deposit and crediting Warford's account were negligent, and that Wymore converted the checks within the meaning of Neb. Rev.Stat. (U.C.C.) § 3–419(1)(c). Johnson also filed a cross-claim against Seafirst alleging that it improperly debited its account and converted the checks.

Thereafter, Wymore sought summary judgment against Johnson and Seafirst, and Seafirst sought summary judgment on its cross-claim against Johnson and its counterclaim against Wymore. Accompanying Seafirst's motion for summary judgment was an affidavit of Peggy Lien, an officer of Seafirst, which attached copies of the checks bearing forged indorsements. Each check bore handwritten indorsements, including those issued to businesses, and on two checks the indorsement was misspelled. Also attached to Lien's affidavit were affidavits from all but two of the named payees. These named payees, all suppliers of lumber for Johnson, indicated that they had never seen or received the funds designated in the checks, the checks did not bear their signature, they had not authorized anyone to sign the checks on their behalf, and they had no interest in the checks. Seafirst's motion also contained the depositions of Wymore's president, Michael Braun, and vice president, Kay Novotny. Both bank officers testified that they had knowledge that Warford was frequently overdrawn on his Joinco account and late on making loan payments. Novotny testified about Wymore's check-cashing procedures, and stated that when Warford presented the checks bearing forged indorsements for acceptance, Wymore took no action to determine if the payees' indorsements were valid. Novotny further testified that Wymore was not concerned where the money came from, as long as Warford covered his overdrafts and loan payments.

In granting Wymore's motion for summary judgment against Johnson, the district court ruled that section 3–405(1)(b) shielded Wymore from any liability, and that Johnson failed to oppose the motion with evidence suggesting that Wymore acted in a commercially unreasonable manner. In granting Seafirst's motion for summary judgment against Johnson, the district court also concluded that there was no evidence suggesting that Seafirst acted in a commercially unreasonable manner. Finally, the district court granted Wymore's motion for summary judgment against Seafirst, again concluding that Wymore was protected by section 3–405(1)(b) and that Seafirst offered no evidence of Wymore's negligence. Thus, the district court

---

1. Section 3–405 provides:

(1) An indorsement by any person in the name of a named payee is effective if

\* \* \* \* \* \*

(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; \* \* \*

concluded that Wymore did not breach its warranty of good title to Seafirst, and Seafirst was not entitled to attorney's fees. Johnson and Seafirst now appeal these decisions.

## I.

We first discuss Johnson's claim against Wymore. For reversal, Johnson maintains that the district court erred in granting Wymore's motions for summary judgment, because Johnson presented a submissible case against Wymore for both negligence and conversion. Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In passing upon a motion for summary judgment, we give the non-moving party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in the pleadings and affidavits. *See Loudermill v. Dow Chem. Co.,* 863 F.2d 566, 571 (8th Cir.1988).

Generally, if a person not authorized to sign or indorse an instrument in the name of another does so, that signature or indorsement is a forgery and is "wholly inoperative as that of the person whose name is signed." Neb.Rev.Stat. (U.C.C.) § 3–404(1). A drawer can therefore avoid liability by showing an unauthorized indorsement. Also, under Neb.Rev.Stat. (U.C.C.) § 3–419(1)(c), one who takes an instrument with a forged indorsement has converted the instrument. Thus the person upon whom the loss usually falls, in the absence of the forger, is the first person to deal with the forger. In this case, it would be Wymore.

A significant exception to these general rules is set out in Neb.Rev.Stat. (U.C.C.) § 3–405(1)(b) which provides, "An indorsement by any person in the name of a named payee is effective if * * * a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument * * *." This rule addresses the situation known as the "fictitious payee," where the law has determined that an employer, who is in a better position to avoid forgery, should properly bear the risk of loss from forgery which results from the employment of a cheating payroll clerk or other employee. J.J. White & R.S. Summer, *Uniform Commercial Code* § 16–8 (2d ed. 1980). The facts of this case fall within the scope of section 3–405(1)(b) as Warford, who was authorized to write checks on behalf of his employer, Johnson, wrote checks to named payees intending that they have no interest in the checks. He then forged the payees' signatures on the checks and deposited them in his account at Wymore. Thus, under section 3–405 Johnson would bear the loss arising from its employee forging indorsements on checks drawn on its Seafirst account.

The Nebraska Supreme Court, however, has stated that the protections of section 3–405 do not overcome the negligence of a bank. *Travelers Indem. Co. v. Center Bank,* 202 Neb. 294, 297, 275 N.W.2d 73, 75 (1979). In *Travelers,* the court held, "[n]otwithstanding the provisions of § 3–405, U.C.C., a bank may nevertheless be liable to a drawer when it, the bank, has acted negligently." 202 Neb. at 297, 275 N.W.2d at 75. The court further stated "that before such negligence may arise there must be some showing that the bank was either placed on such notice as to require further investigation or acted in a manner which was commercially unreasonable." *Id.*

Wymore, however, argues that section 3–405 should be construed as an absolute defense for a bank accepting checks bearing forged indorsements, *see Western Casualty & Sur. Co. v. Citizens Bank of Las Cruces,* 676 F.2d 1344, 1347–48 (10th Cir. 1982), and that the language from *Travelers* is only dictum, not binding law. In determining a state's interpretation of the Uniform Commercial Code, we defer to the knowledge of the district judge as to state law. *W.B. Farms v. Fremont Nat'l Bank & Trust Co.,* 756 F.2d 663, 666 (8th Cir. 1985). Unless it lacks reasonable authority, we accept his judgment as to the content of state law. *Id.* Here, the district judge actually quoted from *Travelers* and interpreted it to be binding law. From a

careful reading of *Travelers*, we accept the district court's determination as a reasonable interpretation of section 3–405.

### A.

■ The question is therefore whether Johnson offered sufficient evidence to establish that Wymore acted negligently. The district court held that since Johnson failed to oppose Wymore's summary judgment motion with evidence of industry standards or other statements showing commercial unreasonableness, the granting of summary judgment was appropriate. We believe that the district court viewed the issue too restrictively in focusing its attention on the lack of evidence of industry standards or statements that the bank acted in a commercially unreasonable manner. From a careful review of the record, we are satisfied that Johnson offered sufficient other evidence to indicate that Wymore, through its officers, was "placed on such notice as to require further investigation" into Warford's financial situation. *See Travelers*, 202 Neb. at 297, 275 N.W.2d at 75.

In its complaint Johnson bases its claim of negligence on the following acts attributed to Wymore: (1) numerous checks made payable to third parties were deposited in Warford's personal account entitled Joinco, (2) the checks were irregular in form and bore physical evidence of forgery, (3) Wymore had no corporate resolution establishing the Joinco account, (4) Wymore knew or should have known that Warford's acts were in violation of his fiduciary duties and other obligations to Johnson, and (5) an employee of Wymore who was related to Warford, Kay Novotny, aided and abetted Warford by assisting him in depositing the checks, with knowledge that Warford was violating his fiduciary duties to Johnson and that the checks bore forged indorsements.

In opposition to summary judgment, Johnson first contends the evidence establishes that Wymore's check-cashing policies were less than adequate to detect a forgery. Kay Novotny, assistant vice president of Wymore and Warford's sister-in-law, testified that when Warford deposited the checks drawn on the Seafirst account into his Joinco account, Wymore allowed the deposits and immediately credited his account without checking the validity of the indorsements. It was Wymore's policy that the tellers only inspect the checks to ensure that they had a signature on the back. It did not require that the name on the front be identical to the indorsement, that the check be indorsed in front of the teller, or that the teller verify the signature.

Further, the evidence supports the inference that Wymore continued to accept the checks despite its knowledge that Warford's financial history at Wymore was extremely unstable. According to Novotny, Warford's Joinco account was one of the top five most frequently overdrawn accounts at Wymore. Michael Braun, president of the bank, testified that he regularly visited Warford and spoke with him about his overdraft position, requesting that he clear up the situation, and that after these conversations, Warford would then cover the overdrafts. Novotny testified that Wymore employees never questioned Warford when he continually deposited into his account these checks payable to others bearing their indorsements. According to Novotny, as long as Warford deposited checks to cover his overdraft position, the bank was satisfied. Braun also testified that during this same time period, Warford, one of Wymore's largest borrowers, had an outstanding loan balance with Wymore in excess of $180,000.00, which at times exceeded the bank's legal lending limit. According to Braun, Warford was often late in making his loan payments and the payments that he did make came from the Joinco account.

Additionally, copies of the checks bearing forged indorsements were submitted. All of the checks made payable to businesses had handwritten company indorsements and many of the checks bore no individual officer's co-indorsement. Further, on one of the checks Warford misspelled the payee's name in the indorsement and on another check he supplied a completely dif-

ferent name on the indorsement from that on the front of the check. Johnson maintains that these irregularities should have put Wymore on notice of Warford's activities.

From this evidence, we conclude that Johnson made a submissible showing that Wymore was negligent. In viewing the facts most favorable to Johnson, the evidence indicates that bank officers Braun and Novotny had knowledge of Warford's unstable financial activities and history at Wymore, but failed to inquire as to why he deposited checks which were made payable to other people and bore irregular indorsements. These facts support an inference that Wymore was negligent when it failed to take reasonable steps to investigate Warford's authority to negotiate such checks and to deposit the funds into his account, and that it acted in a commercially unreasonable manner.

Wymore relies on several cases to support its argument that Wymore was not negligent and that summary judgment was justified. Wymore first points to *Travelers Indem. Co. v. Center Bank*, which held that a bank that "failed to make reasonable and proper inquiry as to the maker agent's authority to make use of [its employer's] checks, without more," is not negligent. 202 Neb. at 298, 275 N.W.2d at 76. The facts of this case are distinguishable, however, as Johnson also offered other factors which demonstrate that Wymore could have been negligent, such as testimony concerning the bank's knowledge of Warford's financial history and evidence of irregularities on the checks bearing forged indorsements. Wymore further cites *British Caledonian Airways Ltd. v. First State Bank*, which held that a bank is not negligent for accepting checks when the indorsement does not match the payee's name exactly. 819 F.2d 593, 598 (5th Cir. 1987). Again, because Johnson has shown more than just misspelled indorsements on the checks, we are not persuaded by this case. Further, while Nebraska courts have not addressed this issue, other courts have held that the protections of section 3–405 are allowed only if the forged indorsement is identical to the named payee. *See Con-*

*solidated Public Water Supply Dist. No. C–1 v. Farmers Bank*, 686 S.W.2d 844, 850 (Mo.Ct.App.1985); *Seattle–First Nat'l Bank v. Pacific Nat'l Bank*, 22 Wash.App. 46, 54, 587 P.2d 617, 623 (1978). Accordingly, we conclude that Johnson made a submissible case that Wymore acted negligently in accepting the forged checks, and that summary judgment is therefore inappropriate.

### B.

■ Wymore argues, however, that summary judgment was proper because Johnson had no standing to sue Wymore for conversion. While the district court expressed doubts as to whether a drawer could bring such a conversion action against a depository bank, its decision to grant a summary judgment was not rendered on that basis. Because section 3–419, which deals with conversion, does not indicate who may be sued in such an action, we must look to the laws of Nebraska. Nebraska courts, however, have not specifically addressed this issue. Wymore, relying on a non-Nebraska case, contends that it is the "well-accepted rule of law" that a drawer has no standing to sue a depository bank for conversion, citing *Stone & Webster Eng'g Corp. v. First Nat'l Bank & Trust Co.*, 345 Mass. 1, 184 N.E.2d 358 (1962). We are not persuaded by Wymore's argument. More recently, other courts have held that a drawer can sue a depository bank for conversion. *See Justus Co. v. Gary Wheaton Bank*, 509 F.Supp. 103, 105–06 (N.D.Ill.1981); *Tedesco v. Crocker Nat'l Bank*, 196 Cal.Rptr. 534, 537, 148 Cal.App.3d 1211, 1216 (1983). Furthermore, the Nebraska Supreme Court in *Travelers* recognized that a drawer has standing to sue a depository bank in a negligence action. From these cases, we are satisfied that Johnson had standing.

■ Finally, Wymore argues that Johnson has no cause of action because it has not established that it has suffered any damages. Under section 3–419(2), the amount of loss in a conversion action is presumed to be the face amount of the

checks converted. This presumption, however, can be rebutted where it is shown that the drawer has received benefits from the checks. Wymore contends that after Warford deposited the checks bearing forged indorsements into his Joinco account, he then issued separate checks to the named payees from the Joinco account. Wymore maintains that Johnson in turn received lumber from the named payees and was therefore not injured by the transaction. Johnson, to the contrary, argues that it has suffered losses. While the deposition of Braun contains conclusory statements that Warford paid some money to suppliers from the Joinco account, we have been cited to nothing in the record to substantiate that Johnson received lumber from the suppliers. *Cf. United States v. Cohen*, 738 F.2d 287, 290 (8th Cir.1984) (appellate court not required to search the record for error). We are satisfied that this testimony does not dispel the existence of material issues of fact so as to rebut the presumption that Johnson suffered damages. This question as to who suffered losses from the check forging scheme is an issue to be determined upon remand. Accordingly, we reverse the district court's decision to grant Wymore summary judgment and remand the issue to the district court.[2]

## II.

■ Johnson also appeals the district court's decision granting Seafirst's motion for summary judgment. Johnson alleged that Seafirst improperly debited its account and converted the checks in violation of section 3–419(1)(c). Again, section 3–405, which provides that a forged indorsement is effective against the drawer in the case of a fictitious payee, is applicable. Because there was no evidence on the record suggesting that Seafirst had notice of the forged indorsements or acted in a commercially unreasonable manner, we conclude that as a matter of law Seafirst had not

converted the checks and was not liable to Johnson. We therefore affirm the district court's decision to grant Seafirst's motion for summary judgment.

## III.

■ Finally, Seafirst appeals from the district court's decision to grant Wymore's motion for summary judgment against it. Seafirst cross-claimed against Wymore, alleging that Wymore breached its warranties under Neb.Rev.Stat. (U.C.C.) § 4–207, and sought damages in the amount of its attorney's fees in this action. Section 4–207 states:

(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that:

(a) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and;

(b) He has no knowledge that the signature of the maker or drawer is unauthorized....

Under this provision, a collecting bank that obtains payment for an item bearing a forged indorsement is liable to the payor or payor bank upon its warranties. The first bank in the collection process is required to make certain that the indorsement on a check is valid, as it is in the better position to insure that one presenting a check has good title. *See Maddox v. First Westroads Bank*, 199 Neb. 81, 89, 256 N.W.2d 647, 653 (1977).

Again, the determination of this issue involves section 3–405, which protects a collecting bank from liability in situations where there is a "fictitious payee." While the district court determined that Wymore is shielded by section 3–405 and granted summary judgment against Seafirst, we have held that there is a genuine issue of

---

**2.** Johnson's conversion claim against Wymore is dependent on whether Wymore is entitled to section 3–405 protection. If Wymore is found to be negligent or on notice of Warford's illegal activities, then the instrument was "paid on a forged indorsement" and therefore converted. If Wymore is not found to be negligent, Johnson bears the risk of loss from forgery and the instrument is deemed not converted.

material fact concerning Wymore's negligence in accepting the checks bearing forged indorsements. What we said with respect to the operation of section 3–405 concerning Johnson's claims against Wymore applies with equal force to Seafirst's claims. Thus, we must also reverse and remand this issue to the district court. If it is determined on remand that Wymore acted negligently in accepting the checks bearing forged indorsements, then such indorsements are not effective under section 3–405, and Wymore breached its section 4–207 warranty of good title to Seafirst.

Seafirst also maintains that it is entitled to damages in the amount of its attorney's fees in this action, based on its breach of warranty claim under section 4–207 and on its allegation that it was an unnecessary party in this action. *See Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 491 F.2d 192 (8th Cir.1974). Because we are remanding this issue to the district court, however, we need not address it.

### IV.

In sum, we conclude that Seafirst and Johnson have made a submissible case that Wymore acted negligently in accepting the checks bearing forged indorsements. Accordingly, we reverse the district court's decision to grant Wymore's motion for summary judgment against Seafirst and Johnson and remand the issue to the district court. Because Johnson has offered no evidence of Seafirst's negligence, however, we affirm the district court's decision to grant Seafirst's motion for summary judgment.