946 F.2d 898
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FIDATA TRUST COMPANY NEW YORK, a New York Corporation,
Colson Services Corp., a New York Corporation,
Plaintiffs-Appellants,
v.
COMMUNITY FIRST FEDERAL SAVINGS AND LOAN, a Washington
Corporation, Pacific First Financial Group, a Washington
Corporation, Pacific First Bank, a Washington Corporation,
Federal Savings and Loan Insurance Corporation, as Trustee
for Community First Federal Savings and Loan, Defendants-Appellees.
 No. 90-35572.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1991.
Decided Oct. 16, 1991.
 
 Before WALLACE, Chief Judge, and HUG and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Fidata Trust Company New York and Colson Services Corporation (Bradford)[1] appeal from a judgment following a bench trial in favor of Community First Federal Savings and Loan (Community). We affirm.
 
 
 3
 * In December of 1984, Bradford signed a Servicing Agent Agreement with First United Fund, Ltd. (First United), a broker dedicated to soliciting investments in certificates of deposit ("CDs"). Under the agreement, Bradford, as nominee owner of CDs opened by First United, collected interest and maturity funds from issuing banks and transmitted these funds to First United's customers.
 
 
 4
 Approximately three months after the signing of the agreement, First United opened two six-month CD accounts at Community in the amount of $1,500,000 (representing $100,000 investments from fifteen customers). Community registered the CDs in First United's name and sent the original CDs to Bradford. Bradford, despite subsequent allegations that Community improperly registered First United as the account holder, failed to object to the registration upon receipt of the CDs. Furthermore, Bradford sent the fifteen First United customers monthly checks representing interest despite receiving only one month's interest from Community.
 
 
 5
 When the CDs matured in August of 1985, Community reinvested the maturity funds in new CDs. Although Bradford never received these funds, it sent payments of slightly more than $100,000 to each of the fifteen underlying investors. Bradford also terminated its agency agreement with First United upon learning that the latter was the subject of a federal criminal investigation into fraudulent practices, but decided to continue servicing existing accounts. Upon maturity of the new CDs, Community sent the proceeds to First United, whose president eventually wired the money to a Swiss bank account. Seeking recovery of the funds, Bradford brought this suit against Community, alleging, among other things, conversion and negligence. Bradford now appeals the district court's judgment in favor of Community.
 
 II
 
 6
 Bradford contends that the district court improperly adopted Community's proposed findings of fact nearly verbatim. However, the district court first made an extensive oral ruling and then signed proposed findings submitted by the prevailing party consistent with its ruling. There is nothing improper in this. Milgard Tempering, Inc. v. Selas Corp. of America, 902 F.2d 703, 706 & n. 3 (9th Cir.1990). The court's findings are not subject to de novo review, as Bradford argues, but rather are reviewed for clear error. Anderson v. Bessemer City, 470 U.S. 564, 572, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)
 
 III
 
 7
 Bradford challenges several evidentiary rulings made by the district court. We review the district court's evidentiary rulings for abuse of discretion and will not reverse such rulings absent some prejudice. Jauregui v. City of Glendale, 852 F.2d 1128, 1132 (9th Cir.1988). On review, the district court's evidentiary rulings are entitled to substantial deference. People v. Cepeda, 851 F.2d 1564, 1566 (9th Cir.1988) ("[A] trial court has wide discretion in determining whether a witness is qualified to testify as an expert."); S.E.C. v. Rogers, 790 F.2d 1450, 1455 (9th Cir.1986) (quoting Anderson, 470 U.S. at 575 ("When findings are based on determinations regarding the credibility of witnesses, [Fed.R.Civ.P.] 52(a) demands even greater deference to the trial court's findings.")).
 
 
 8
 Bradford claims that there is insufficient evidence to support the court's findings based on the testimony of Community's expert, Thomas Kelly. The district court's qualification of Kelly was not an abuse of discretion; Kelly had experience auditing financial institutions and transfer agent functions for seventeen years. Bradford's remaining objections go to credibility, which the district court noted and resolved in Kelly's favor.
 
 
 9
 Nor did the district court err in resolving credibility of other witnesses in a manner adverse to Bradford. Bradford argues that the court improperly discounted the testimony of Richard Giambruno because it was clear, concise, and uncontroverted. However, the district court found that Giambruno was not completely forthright about several matters, including knowledge of his family's legal problems. The district court also acted within the bounds of its discretion in discrediting the testimony of Bradford's expert, William McIllwain. The court found that McIllwain assumed facts that were not accurate and found some of his opinions implausible (such as his conclusion that it would have been proper for Community to wire the funds to Bradford without the approval of First United). Similarly, with respect to Julie Eisenhauer, Community's Portland branch manager, Bradford disputes the district court's finding that her testimony was credible. The district court recognized that her memory was not perfect, but its finding that she testified honestly and its decision to credit her testimony were not an abuse of discretion in light of evidence that several documents, including the new account application and the savings account forms, were consistent with her testimony.
 
 
 10
 Bradford also contends that the district court erred in Eisenhauer's case by failing to allow Bradford to examine her as a hostile witness. Yet the district court properly ruled that leading questions were improper unless direct examination revealed hostility on her part. Cf. United States v. Tsui, 646 F.2d 365, 368 (9th Cir.1981) (district court's "ruling on the use of leading questions is subject to reversal only for an abuse of the court's discretion"), cert. denied, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982). Eisenhauer showed no hostility and was not evasive in her answers to Bradford's questions; thus, the district court did not abuse its discretion in prohibiting leading questions. Nor did the court abuse its discretion by excluding extrinsic evidence concerning Eisenhauer's alleged dishonesty. The court had discretion under Fed.R.Evid. 608(b) to exclude extrinsic evidence that would not be probative of truthfulness; in later making its ruling about Eisenhauer's credibility, the court found that the alleged dishonesty did not affect her credibility.
 
 
 11
 Likewise, the district court did not abuse its discretion in assessing the testimony of Bradford's expert, Stuart McAllister, or in refusing to allow him to proffer a lay opinion about the reasonableness of the investigation of Marsha McCall, McAllister's fellow employee. McAllister had only a limited role in the transactions at issue; moreover, because Bradford's expert McIllwain offered opinions about McCall's investigation, any error in excluding McAllister's cumulative opinion is harmless. Bank of the West v. Commercial Credit Fin. Serv., 852 F.2d 1162, 1165 n. 2 (9th Cir.1988).
 
 IV
 
 12
 Bradford argues that the district court erred in concluding that the accounts were opened properly, rolled over properly in August of 1985, and that First United was the depositor, customer, and account holder with respect to the two CDs.
 
 
 13
 The court found Eisenhauer's testimony that First United instructed her to open the accounts in its name more credible than that of the First United employee who had no recollection of the conversation. The court also found that Eisenhauer's testimony was corroborated by documentary evidence.
 
 
 14
 With respect to the roll-over in August of 1985, the district court again relied on substantial evidence in reaching its conclusion that Community probably received authority to reinvest the funds in new CDs. In particular, the court found that Eisenhauer's testimony that she received a call from someone at First United directing the roll-over was supported by the deposition testimony of Bradford employees Pettinato and Blake and First United employees DeCarlo and Baltrunas. These depositions revealed that First United had financial incentives to--and at times actually did--direct roll-over, despite Bradford's claims to the contrary. The district court therefore did not clearly err in finding that Community properly rolled the funds over.
 
 V
 
 15
 Bradford argues that the district court erred in finding that Community acted in a commercially reasonable manner and that Bradford did not meet its duty of due care under U.C.C. § 4-406. These findings involve mixed questions of law and fact that are reviewed for clear error.[2] See, e.g., Barnett v. Sea Land Serv., 875 F.2d 741, 745 (9th Cir.1989) ("While the determination of whether established facts constitute negligence involves a mixed question of law and fact, the 'mixed question of negligence' is an exception to the general rule that mixed questions are reviewed de novo."); United States v. McConney, 728 F.2d 1195, 1204 (9th Cir.) (en banc) (same), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 16
 The district court referred extensively to the deposition testimony of Bradford employees Blake, Kase, Orrico, Abbadessa, and Ulmer in support of these findings. The testimony of these employees indicated that Bradford often deferred to the judgment of First United and other brokers in similar matters and that Bradford normally communicated with issuing banks such as Community only through its broker. The court also relied on the expert testimony of Community's expert Kelly that in such a situation Community acted reasonably in treating First United as its customer and in relying upon First United's instructions to open the accounts and disburse the maturity proceeds. Finally, the court relied upon uncontroverted evidence showing that Bradford breached its own standards by making payments to First United's customers without first receiving the funds from Community and by failing to detect alleged errors (even long after the funds were erroneously sent to First United's customers). In light of this and other evidence in the record, it cannot be said that the district court clearly erred in finding that Community acted reasonably and that Bradford's own actions failed to meet the standard of due care prescribed by U.C.C. § 4-406.
 
 VI
 
 17
 Finally, Bradford challenges the district court's findings that First United was Bradford's agent throughout the course of its dealings with Community. Bradford also contends that the district court failed to consider Community's duty to inquire into the nature and extent of First United's authority as Bradford's agent before disbursing funds.[3] We review these factual findings for clear error. See, e.g., Dogherra v. Safeway Stores, 679 F.2d 1293, 1295 (9th Cir.) ("A finding that one person is another's agent is generally reviewed as a question of fact, governed by the clearly erroneous standard. The nature and extent of the agent's authority and whether apparent authority existed are also questions of fact.") (citations omitted), cert. denied, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982). Therefore, we need only determine whether the district court's decisions are reasonable and must "not substitute [our] own judgment for that of the trial judge." McConney, 728 F.2d at 1201 n. 7.
 
 
 18
 On the record before us, we cannot say that the district court's findings are clearly erroneous. As the trial court noted, "apparent authority of an agent results from statements, conduct, lack of ordinary care, or other manifestation of the principal's conduct, whereby third persons are justified in believing that the agent is acting within his authority." 3 Am.Jur.2d Agency § 79, at 584 (1986); see also Badger v. Paulson Investment Co., Inc., 311 Or. 14, 803 P.2d 1178, 1184 (1991) (apparent authority arises when "the principal has clothed the agent with apparent authority to act for the principal in that particular. In other words, the principal permits the agent to appear to have the authority to bind the principal.") (quoting Wiggins v. Barrett & Assoc., Inc., 295 Or. 679, 669 P.2d 1132, 1139 (1983)); Lamb v. General Assoc., Inc., 60 Wash.2d 623, 374 P.2d 677, 680 (1962) ("A principal may be estopped to deny that his agent possesses the authority he assumes to exercise, where the principal knowingly causes or permits him so to act as to justify a third person of ordinarily careful and prudent business habits to believe that he possesses the authority exercised, and avails himself of the benefits of the agent's acts."). Given the substantial evidence that Bradford allowed First United to speak for it and took no steps to advise Community of limits on First United's agency, we cannot say that the district court clearly erred in finding that Bradford "permit[ted] the agent to appear to have the authority to bind" it. Badger, 803 P.2d at 1184.
 
 
 19
 Nor can we say that the district court erred in failing to impose a duty of inquiry upon Community. A third party has the right to rely upon the apparent authority of an agent unless he has been put on notice that a question exists as to the agent's authority. Real Estate Loan Fund v. Hevner, 76 Or.App. 349, 709 P.2d 727, 733 (1985); Glendale Realty, Inc. v. Johnson, 6 Wash.App. 752, 495 P.2d 1375, 1377-78 (1972). In light of the expert testimony that Community acted reasonably in following the instructions of First United, the district court did not err in finding that Community did not have good reason to know of the limits on First United's agency.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Fidata Trust Company was formerly known as the Bradford Trust Company. We follow the district court's practice in referring to plaintiffs collectively as "Bradford."
 
 
 [2]
 U.C.C. § 4-406 imposes a duty on the customer to discover and report unauthorized signatures or alterations. The district court held that Oregon law governs events occurring before the maturity date of the second set of CDs (including the period during which Bradford should have discovered the alleged misregistration), and that Washington law governs subsequent events. However, it found that Bradford failed to meet its duty under both Oregon and Washington law
 Both the Oregon and Washington statutes require the customer to exercise ordinary and reasonable care. The courts of both states have recognized that the trier of fact must determine whether these standards are met. See, e.g., Transamerica Ins. Co. v. United States Nat'l Bank, 276 Or. 945, 558 P.2d 328, 335 (1976) (assessment of reasonable care, reasonable banking standards, and negligence is for trier of fact); Parsons Travel, Inc. v. Hoag, 18 Wash.App. 588, 570 P.2d 445, 447 (Wash.Ct.App.1977) (whether bank is estopped from asserting Wash.Rev.Code § 62A.4-406 due to own negligence is question of fact). Because the inquiry under either statute involves questions of negligence and reasonableness, we too review only for clear error. Furthermore, even if Bradford is correct that Community was negligent in its actions, we note that the trier of fact must determine who ultimately bears the loss. See Transamerica Ins., 558 P.2d at 335 ("[W]here there is some evidence of negligence on the part of both parties, the case is for the jury.").
 
 
 [3]
 Bradford incorrectly states that the district court ruled that a trust relationship existed between First United and Bradford. It is true that the district court, in passing, stated that "maybe it wasn't a formal trust relationship, but I guess I'm here to tell you that it was a trust relationship, formal or not." Reporter's Transcript at 1483. In context, however, it is evident that the district court was merely stating that an employee of Community, McCall, acted reasonably in assuming that a trust relationship existed. The district court based its findings on principles of agency, not trust