[No. 23914–7–I.   Division One.   April 23, 1990.]

MARSTON ENTERPRISES, INC., *Appellant*, v. SEATTLE–FIRST
NATIONAL BANK, *Respondent*.

*John S. Mills* and *Reaugh Fischnaller & Oettinger,* for
appellant.

*Hwa–Tsun Feng,* for respondent.

SCHOLFIELD, J.—Marston Enterprises, Inc. (hereinafter
Marston), appeals from a partial summary judgment
entered in favor of Seattle–First National Bank (Sea–First).
Marston contends that Sea–First unlawfully paid three
checks on unauthorized endorsements, that it breached its

warranty of good title, and that Sea–First is collaterally estopped from relitigating its liability for the three checks. We disagree and affirm the summary judgment.

## FACTS

Clifford Marston is president of Marston Enterprises, Inc., which is in the business of operating service stations. James Liddell was president of JHL & Associates, Inc., which was in the business of investment counseling. Marston met Liddell when Liddell purchased gasoline at one of his service stations and when Liddell and Marston attended a Kiwanis luncheon.

In March 1987, Liddell persuaded Marston and his wife to invest in Fidelity, a company that Liddell said he represented. The Marstons issued a check for $15,000 dated March 14, 1987, which was payable to Sea–First. The check was drawn on the Marston account at the Sea–First Houghton branch. Liddell had told Marston that the check needed to be exchanged for cashier's checks which would be sent to Fidelity. Marston accompanied Liddell to the downtown Bellevue branch of Sea–First. The teller asked for identification from Marston and Liddell. By deposition Marston later testified that he did not really see the need for his presence. At some point, Liddell went to another counter to give information about the cashier's checks, but Marston did not go with him. Instead, Marston walked around the bank and talked to people he knew. Marston understood that Liddell was going to purchase two cashier's checks for $7,500 each to be sent to Fidelity. Liddell gave the teller instructions for the cashier's checks. Three cashier's checks were made to the order of "JHL & Associates, Trust." Marston returned to the counter briefly because the cashier requested a service fee for preparing the checks. The checks were put in an envelope. Marston then accompanied Liddell to a Federal Express office, where Liddell was supposed to mail the checks. Marston did not see the name of the addressee, nor did he ask to see the checks.

Liddell endorsed the checks to different individuals as part of a fraudulent Ponzi[1] scheme and did not invest the proceeds with Fidelity as the Marstons intended. Sea–First paid all three checks. One of the three checks was endorsed "JHL & Associates–Pay to the order of David Erickson". The second check had the endorsement "JHL & Associates–Pay to the order of Louise Erickson". The third check was endorsed "JHL & Associates, Trust for further credit to 15–502–693". Liddell pleaded guilty to first degree theft of the proceeds of the three cashier's checks.

Marston filed a complaint for money damages against Sea–First. It alleged five causes of action: (1) that Sea–First breached its obligation of due care and good faith in handling the cashier's checks; (2) that Sea–First's refusal to reimburse Marston was an unfair, deceptive business practice; (3) that by paying the cashier's checks on a forged endorsement, Sea–First is liable for conversion; (4) that Sea–First breached the warranties set forth in RCW 62A.3–417 and RCW 62A.4–207; (5) that Sea–First breached its duty to plaintiff to act in a commercially reasonable manner by paying cashier's checks which were endorsed by individuals rather than the payee, JHL & Associates, Trust. Sea–First's answer asserts that it acted in a commercially reasonable manner, that Sea–First is exempt from the Consumer Protection Act, and that Marston's loss was caused by its own negligence.

Marston moved for summary judgment on the issue of Sea–First's liability for paying the three cashier's checks. It contended that Sea–First was collaterally estopped to litigate its liability because of a superior court judgment and that Sea–First wrongfully paid the cashier's checks. Marston claimed Liddell had no authority to endorse checks on behalf of the trust since the trust was nonexistent;

---

[1] In a Ponzi scheme, the perpetrator uses funds of recent investors to pay or service obligations to prior investors. The scheme involves no bona fide business to generate funds or profits for investors.

therefore, Sea–First was liable to its customer on breach of duty and breach of warranty grounds. Sea–First made a cross motion for summary judgment on the basis that Clifford Marston had designated Liddell as his agent in preparing the cashier's checks and that Sea–First exercised due care in paying the checks. Sea–First also disputed application of collateral estoppel.

### APPLICATION OF COLLATERAL ESTOPPEL

Marston contends that Sea–First's liability for paying the three cashier's checks has already been determined in a previous superior court case. Haberlach v. Seattle–First National Bank, King County cause 87–2–11821–5 (Nov. 13, 1987). Although the injured party in both cases was an unwilling participant in Liddell's Ponzi scheme, we find the factual differences in the two cases prevent application of the doctrine of collateral estoppel.

■ The major factual difference concerns the level of participation by the investor. In Haberlach, the investor issued a check for $15,000 drawn on Sea–First and made payable to JHL & Associates Trust. Liddell took the check to Sea–First, endorsed it with JHL & Associates and his own name, and received two cashier's checks to be made payable to two third parties. Because of irregularities on the face of the check and because the bank violated its own rules by issuing the cashier's checks rather than putting the personal check through for collection, the arbitrator found lack of care by Sea–First and awarded $15,000 to the investor which, by stipulation, was reduced to judgment. In the instant case, the investor accompanied Liddell to the bank for the express purpose of purchasing cashier's checks and allowed Liddell to name the amounts and the payees of these checks. Also, the record does not contain a showing of Sea–First's failure to follow its own rules. The issue of Sea–First's liability for paying the three cashier's checks involved in this case was not decided in Haberlach, and Marston is not entitled to a judgment as a matter of law.

WERE THE ENDORSEMENTS BY LIDDELL UNAUTHORIZED?

Marston contends that Sea–First is liable because it paid the cashier's checks on unauthorized endorsements. It contends that the endorsements were unauthorized because the payee, JHL & Associates, Trust, was nonexistent. Sea–First claims that the use of the comma and the word "Trust" on the cashier's checks amounted to a description and did not convert the payee on the checks from JHL & Associates to a nonexistent entity.

As a general rule, an unauthorized endorsement is wholly inoperative to pass title or to authorize payment of a check.

> [A] drawee bank may not debit its customer's account when it pays a check over a forged indorsement. This is because the underlying relationship between a bank and its depositor is the contractual one of debtor and creditor, implicit in which is the understanding that the bank will pay out its customer's funds only in accordance with the latter's instructions. Thus, absent contrary instruction or legislative exception, when a drawer issues a check in the name of a particular payee, the drawee bank is to apply funds from the drawer's account to its payment only upon receiving the payee's authorized indorsement. In this perspective, a forged indorsement, since it is an unauthorized signature, in and by itself would be "wholly inoperative".

(Citations omitted.) *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Bank,* 57 N.Y.2d 439, 444, 442, N.E.2d 1253, 456 N.Y.S.2d 742, 745 (1982). *See* RCW 62A.4–401; J. White & R. Summers, *Uniform Commercial Code* §§ 16–2, 16–8 (2d ed. 1980); *Thieme v. Seattle–First Nat'l Bank,* 7 Wn. App. 845, 502 P.2d 1240 (1972). In addition, an unauthorized endorsement prevents a holder from becoming a holder in due course. RCW 62A.3–202; *Von Gohren v. Pacific Nat'l Bank,* 8 Wn. App. 245, 254, 505 P.2d 467 (1973).

Does this record present a genuine triable issue as to whether the endorsement by Liddell was authorized? *See Wilson v. Steinbach,* 98 Wn.2d 434, 656 P.2d 1030 (1982). Neither party disputes Liddell's authority to endorse for

JHL Associates. *See* RCW 62A.3–403. The critical determination is whether the words "JHL Associates, Trust" identified JHL Associates or a nonexistent trust entity as the payee.

■ After reviewing the record in the light most favorable to Marston, we hold as a matter of law that JHL Associates was the payee. The word "trust" was merely a descriptive word and did not name a nonexistent payee. RCW 62A.3–117 provides in part:

> An instrument made payable to a named person with the addition of words describing him
>
> . . . .
>
> (b) as any other fiduciary for a specified person or purpose is payable to the payee and may be negotiated, discharged or enforced by him;

U.C.C. § 3–117, Official Comment 2 provides additional explanation of the effect of adding the word "Trust" to the name of the payee.

> 2. Subsection (b) covers such descriptions as "John Doe, Trustee of Smithers Trust," "John Doe, Administrator of the Estate of Richard Roe," or "John Doe, Executor under Will of Richard Roe." In such cases the instrument is payable to the individual named, and he may negotiate it, enforce it or discharge it, but he remains subject to any liability for breach of his obligation as a fiduciary. Any subsequent holder of the instrument is put on notice of the fiduciary position, and under the section on notice to purchaser (Section 3–304) is not a holder in due course if he takes with notice that John Doe has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit, or otherwise in breach of duty.

*See* 5 R. Anderson, *Uniform Commercial Code* § 3–117:5 (3d ed. 1984).

As the comment suggests, Sea–First could be liable if it had notice that JHL & Associates or Liddell negotiated the instrument in breach of a fiduciary duty. A related situation was presented in *Von Gohren v. Pacific Nat'l Bank*, *supra.* In that case, an employee who had authority to sign checks on behalf of the employer endorsed checks which

were payable to the employer. She deposited these checks into her personal account. The Court of Appeals held that the employee was authorized to deposit the third party checks into her employer's account; therefore, her negotiation of the checks for deposit in her personal account was unauthorized. Since the defendant bank had notice that she was a fiduciary for her employer and was depositing the checks at issue in her personal account rather than the employer's account, the bank could not claim status as holder in due course. *See* RCW 62A.3–304(2).

·The record contains no showing of genuine issues of material fact as to Sea–First's knowledge of alleged breaches of fiduciary duty by JHL & Associates. Therefore, we affirm the summary judgment.

WINSOR and BAKER, JJ., concur.

Review denied at 115 Wn.2d 1008 (1990).